PEOPLE v. CAVANAUGH.

1. CRIMINAL LAW—CONFESSIONS—ACCUSED HAS RIGHT TO SHOW CIRCUMSTANCES SURROUNDING ALLEGED CONFESSION.

Where, in a prosecution for rape, police officers had testified that defendant's confession, which he repudiated and claimed had been extorted by duress, browbeating, intimidation, and holding him *incommunicado*, was voluntary, it was error to exclude his testimony as to what the police said to him when he asked to see his parents and spiritual adviser, since he had a right to lay before the jury his claim of what occurred, and it was for the jury to say whether the confession was voluntary.

2. SAME—CONSTITUTIONAL LAW—DUE PROCESS—RIGHT OF ACCUSED TO COUNSEL.

While a voluntary confession of commission of an established crime is evidence, a confession extorted by mental disquietude, induced by unlawfully holding accused *incommunicado*, is for-

bidden by the constitutional guaranty of due process of law, and inhibited by the right of accused to have the assistance of counsel.

3. SAME—PARENTS AND ATTORNEY HAVE RIGHT TO ADVISE ACCUSED IN JAIL.

Police having custody of accused may not deny his parents or an attorney employed in his behalf the right to see and advise him.

4. SAME—TRIAL—REMARKS OF COURT.

Remarks by the trial court that whether accused called for his parents, attorney, or priest made no difference upon the question of whether his alleged confession was voluntary was prejudicial error, since it was for the jury to say whether it made any difference.

5. SAME—CONFESSIONS—CIRCUMSTANCES OF ALLEGED CONFESSION MAY BE EXAMINED INTO.

Defendant accused of rape, who claims that an alleged confession was extorted from him by the police by duress, browbeating, intimidation, and holding him *incommunicado,* is entitled to a trial at which the most searching examination of all of the circumstances of his alleged confession will be permitted.

CLARK and SHARPE, JJ., dissenting.

Error to Genesee; Brennan (Fred W.), J. Submitted January 17, 1929. (Docket No. 148, Calendar No. 33,786.) Decided June 3, 1929.

Joseph Cavanaugh was convicted of rape. Reversed, and new trial ordered.

*Guy M. Wilson,* for appellant.

*Wilber M. Brucker,* Attorney General, *William R. Roberts,* Prosecuting Attorney, *Charles D. Beagle,* Assistant Prosecuting Attorney, for the people.

CLARK, J. (*dissenting*). Defendant was convicted of rape of prosecutrix, a woman 49 years old, and he brings error.

During the argument the following:

"*Mr. Wilson:* I object to the argument of the prosecuting attorney about what we are reading in the newspapers about this California case.

"*The Court:* It is simply replying to what the General (defendant's counsel) himself said.

"*Mr. Wilson:* I said nothing about a California case whatsoever. I want my objection on the record.

"*Mr. Stipes* (prosecuting attorney): I say to you that he said, 'People don't do things like this and then go and visit with little children.' I say to you that you all know that just recently a man took a little girl 11 years old, when he liked her, and liking her he put a towel around her neck and choked the life out of her body. That is a case that comes within your recollection, and you can recall from your own experiences where a man has played with little children and done the most dastardly things."

The argument of the prosecuting attorney is urged as reversible error, citing *People* v. *Nixon,* 243 Mich. 630. Nixon was convicted in Genesee county of taking indecent liberties with a 5-year old girl. The Hotelling case had occurred in the county shortly before, and was a matter of wide publicity, indignation, and excitement. Hotelling induced a 5-year old girl to ride with him, took her to a secluded spot, assaulted and murdered her, and horribly mutilated her body. The unprovoked argument of the prosecuting attorney, in which he urged consideration of that crime in passing upon the charge against Nixon, was held to be reversible error.

It is assumed in the case at bar that the prosecutor referred to the so-called Hickman case in California, which he stated was the murder of a girl 11 years old. In the Nixon case and in the Hotelling case the offense was against a 5-year old girl, and in the same county. There is no such similarity here. The

Hickman case was in a distant State, of passing interest here, merely another murder in the present crime tide. Here the crime is rape of a woman of mature years. Defendant's counsel had argued to the jury the evidence that his client that evening had gone to a home and visited with little children, and that one who so visited would not commit the crime charged. As stated by the trial judge, the remarks of the prosecutor were in reply to such argument. It was proper for the prosecutor to argue that men who have committed crimes have also associated with children, but he ought not to have mentioned the particular crime. But in view of the remoteness of the crime suggested, and of the dissimilarity in the offenses and in the facts and circumstances, we agree with the trial judge that the incident is not reversible error.

Defendant's counsel asked a witness:

"Do you know Cavanaugh's general reputation as to his character in the community in which he lives?"

—to which the prosecutor objected: "Not being put in proper form." Sustaining the objection is assigned as error. The same witness had testified just before being asked the above question:

"I have known Cavanaugh for a long time. I know his reputation there in the community."

The witness had already said that he knew defendant's reputation in the community in which he lived—that is in effect his general reputation. The witness was already qualified to testify of defendant's general good character with respect to the trait or traits here involved (*People* v. *Albers,* 137 Mich. 678; Gillett on Ind. & Col. Ev. 360; Underhill's Crime Ev. [3d Ed.] § 135), but he was not asked so to testify.

We do not see prejudice to defendant because of the ruling.

Prosecutrix testified:

"I saw him disappearing in the dark—I got a glimpse of the outline of the back of his figure."

In stating the claimed facts to the jury, the trial judge construed such testimony as follows: "And further, on one occasion got a fleeting glance of the back of his head," on which error is assigned. Strictly speaking, the "back of his head" is a part of "the back of his figure." We perceive no prejudice in this slight variance from the testimony.

Error is assigned on restricting cross-examination of a witness for the people, a police officer. He testified:

"I remember when you (Mr. Wilson) asked to see him and we refused you permission to see him and you had started to the courthouse to get a writ of *habeas corpus* when I told you that you could see him.

"*Q.* Did I have the papers prepared at that time?

"*A.* I could not say.

"*Q.* Did I have the papers in my hand?"

At this point the court indicated that counsel had pursued the matter far enough. This matter is stressed as bearing upon the question of whether the confession was made voluntarily. Defendant testified fully in that regard, as did a number of other witnesses. The question was submitted to the jury under instructions of which no complaint is made. Defendant preferred no requests to charge. Apart from the confession itself, defendant admitted his guilt to a police officer, which admission

he did not deny. We think the incident not reversible error. There is evidence that at first police officers did deny to counsel access to accused, but access was permitted and there is no contention that there was not ample time and opportunity to prepare defense. It may be that conduct of police officers is here open to criticism, but the question is, Ought there to be reversal on that ground? We are not so persuaded. Someone raped the woman. At one time defendant admitted he did it. The jury found that he did. The record does not indicate miscarriage of justice. In these circumstances reversal is not required.

Other assignments briefed by counsel have been considered and call for no discussion.

Judgment affirmed.

SHARPE, J., concurred with CLARK, J.


WIEST, J. I am not in accord with the opinion of Mr. Justice CLARK.

This young man was sentenced to prison for life upon identification of his voice by the victim of a rape and his alleged confession of guilt. Upon the trial he repudiated the confession and claimed it was extorted by duress, browbeating, intimidation, and holding him incommunicable. Defendant testified:

"They (police) questioned me at night, would not let me sleep, then would stand outside my cell and say, 'Why didn't you tell the truth,' and then when I would try and tell them, they would call me a liar * * *. I asked to see my father and mother and Msgr. Dunnigan, my priest.

"*Q.* What did they say in relation to that?

"*Mr. Stipes* (prosecutor): I object to the question for the reason that it is immaterial in this case.

That would not be any reason to cause this confession to be anything but voluntary.

"*The Court:* I sustain the objection.

"I asked to see a lawyer and they said, 'A lawyer would not do you any damn good.'"

The ruling was erroneous. The police had testified that the confession was voluntary. Defendant had an undoubted right to lay before the jury his full claim of what the police said to him, and it was for the jury to say whether, under all the circumstances, the confession was voluntary.

A voluntary confession of commission of an established crime is evidence long sanctioned, but a confession, extorted by mental disquietude, induced by unlawfully holding an accused incommunicable, is condemned by every principle of fairness, has all the evils of the old-time *lettre de cachet,* is forbidden by the constitutional guaranty of due process of law, and inhibited by the right of an accused to have the assistance of counsel. An accused may be apprehended and held in safe custody to answer an accusation in court, but the custodian of his person possesses no inquisitorial power or right to hold him incommunicable while endeavoring to exact a confession. Holding an accused incommunicable to parents and counsel is a subtle and insidious method of intimidating and cowing, tends to render a prisoner plastic to police assertiveness and demands, and is a trial of mental endurance under unlawful pressure.

A police officer in the detective bureau was a witness, and testified:

"I was present at the time that he signed the statement. At the time he made the statement and at the time he signed it, he was not threatened in any manner by the officers present nor was he offered

any hope of reward nor any promises held out to him for the signing of the statement, as far as I know, the act was voluntary on his part.  *  *  *  I had talked with the respondent the evening he was picked up, again on the next day and on the third day after he was picked up he made the confession.  *  *  *  After his arrest he was kept *incommunicado;* no one was permitted to see him. He was kept in a separate cell away from other prisoners. He did not ask me to see Father Dunnigan nor to see his lawyer. He did ask to see his father and mother, but I told him he could not.''

A police detective testified on cross-examination:

''I don't remember Joe asking to see his father, but I do remember his father asking to see Joe, and I told him he could. not see him. I don't remember Joe asking to see Father Dunnigan. I don't recall Joe asking to see an attorney. I remember when you (defendant's attorney) asked to see him, and we refused you permission to see him and you had started to the courthouse to get a writ of *habeas corpus* when I told you that you could see him.

''*Q.* Did I have the papers prepared at that time?

''*A.* I could not say.

''*The Court:* How is that material?

''*Mr. Wilson:* Simply to show the attitude of the officers, in view of our defense.

''*The Court:* I don't think you ought to mix up any trouble you had with the officers.

''*Mr. Wilson:* I insist we have a right to show they were holding the boy *incommunicado.*

''*The Court:* I don't think that it is material.

''*Mr. Stipes:* That is the reason I have objected to it.

''*Mr. Wilson:* I think it is material.

''*The Court:* Take up time with something we have got to take up.''

The defendant was held incommunicable. He could not send for or employ counsel. His father was refused right to see him. When an attorney, presumably employed by his father, appeared at the jail and asked to see defendant, he was refused the right to do so until the attorney started for the courthouse to get a writ of *habeas corpus*. In this State a parent may not be denied the right to see and have conversation with a child in jail and accused of crime. Neither may police, having custody of one accused of crime, deny an attorney, employed by or in behalf of a prisoner, the right to see and advise the accused. The last-mentioned police officer testified that the confession was voluntary, and counsel had a right to go fully into his attitude and lay before the jury the reason for the officer finally granting right to see the prisoner. The court was in error in excluding the inquiry.

The person who typed the confession was asked on cross-examination:

"*Q.* Did you hear Joe Cavanaugh ask for permission to see Father Dunnigan?

"*A.* No, sir.

"*Mr. Stipes:* I object to that; with all due respect to all of the reverend fathers, what has that to do with it, whether he seen a preacher, or asked for him.

"*Mr. Wilson:* I object to the language of the prosecuting attorney.

"*The Court:* I think I will sustain the objection. I can't understand what that has to do with the case on trial here whether he called for me, or the circuit judge, or Father Dunnigan, or anybody else—that doesn't make any difference."

The question was answered, but the remarks of the court were prejudicial. Whether defendant's

call for father, mother, attorney, and priest did not make any difference upon the question of his alleged confession being voluntary was for the jury.

Defendant is entitled to a trial at which the most searching examination of all the circumstances surrounding his alleged confession will be permitted.

The conviction is set aside, a new trial granted, and defendant remanded to the custody of the sheriff of Genesee county to await such trial.

NORTH, C. J., and FEAD, FELLOWS, and MCDONALD, JJ., concurred with WIEST, J. POTTER, J., did not sit.