PEOPLE v. MOSHIER.

1. CRIMINAL LAW—CONDUCT OF ATTORNEY AT TRIAL—EVIDENCE.
   Claim of defendant who had been charged with first-degree murder and been convicted of manslaughter that she had not been adequately represented at the trial by the attorney of her choice because of his incapacity due to being under the influence of intoxicating liquor, urged as ground for reversal and new trial, was not sustained by record in view of reduction of conviction, experience of the attorney and of the trial judge.

2. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
   Denial of new trial, sought because of newly-discovered evidence, did not constitute an abuse of discretion where the newly-discovered witnesses appear to have been interested in defendant's release, do not explain their delay in not disclosing their knowledge for more than four years and their story does not weigh heavily as against defendant's voluntary confession.

3. HOMICIDE—CONFESSION—CREDIBILITY—FRAUD.

Motion for new trial in prosecution for first-degree murder wherein conviction was for manslaughter because detailed confession, now claimed to have been false, was alleged to have been obtained by trickery was properly denied where there was squarely contradictory testimony, between defendant and the people's main witness as, to events leading up to the confession and such alleged fraud and trickery was fully advanced by defendant's counsel in cross-examination and in defendant's testimony before the jury, the sole judge as to the credibility of witnesses.

4. CRIMINAL LAW—CONFESSIONS—EVIDENCE.

The Supreme Court does not disturb the finding of a jury in a criminal prosecution that a defendant's confession is true where the testimony affecting its credibility, taken before the jury, was squarely contradictory and there was adequate testimony to support jury's finding.

5. HOMICIDE—MANSLAUGHTER—CONFESSIONS—EVIDENCE.

Conviction of manslaughter, based in part upon admissions made by a defendant of low mentality, under the domination of an intelligent third person interested in collecting a reward, was supported by testimony and not against the weight of the evidence, accepting that of the people as true.

Appeal from Iosco; Dehnke (Herman), J. Submitted June 17, 1943. (Docket No. 79, Calendar No. 41,752.) Decided October 11, 1943.

Winnifred Moshier was convicted of manslaughter. Affirmed.

*Bernard S. Frasik,* for appellant.

*Herbert J. Rushton,* Attorney General, and *H. Read Smith,* Special Prosecuting Attorney, for the people.

BOYLES, C. J. The defendant was tried before a jury in Iosco county on an information charging her with murder of the first degree, convicted and sen-

tenced for the crime of manslaughter. A motion
for new trial was made on three separate grounds,
and denied by the trial court. On appeal, the de-
fendant argues that the circuit judge was guilty of
an abuse of discretion in refusing to grant a new
trial, and relies on the same grounds for reversal.

On or about June 23, 1936, a 10-year-old boy,
named Robert Kenyon, was reported to the State
police at West Branch as missing from the home
of his aunt in Reno township, Iosco county, where
he had been staying. Late in the afternoon of
June 22d the boy and his aunt had been going to a
pasture after the cows when Robert left her at the
gate of the pasture and started toward the nearby
flats of the Au Gres river. He did not return,
search of the neighborhood was made, and the
officers notified. Four days later his mutilated
body was found in the Au Gres river nearby. His
throat had been cut, there was no doubt that a crime
had been committed. Little progress was made in
solving the mystery of the murder until about four
years later when the defendant confessed having
committed the crime and was placed on trial.

1. For reversal and a new trial, the defendant
urges that she was not adequately represented by
counsel at the trial—that her attorney was inca-
pacitated by being under the influence of intoxi-
cating liquor. He was the attorney of her choice.
We have examined the record with care, to find any
indication of laxness or incompetence of her at-
torney. His presentation of defendant's proofs
was able, and his cross-examination was keen and
at times masterly. He ably presented the theory
of the defense, that the defendant was a weak-
minded woman misled into a confession thinking
that she was merely writing a story for publication.
He succeeded in reducing the conviction to man-

slaughter when a verdict of murder in the first degree might reasonably have been returned. He had been a practicing attorney 16 years, an assistant prosecutor of Wayne county and an assistant attorney general of the State. The circuit judge, an experienced and learned jurist, would not have allowed the defendant's right of trial by jury to be prejudiced in the manner claimed, had it occurred. We find nothing in the record to justify any finding of a miscarriage of justice on this claim of error.

2. Defendant's second ground urged for reversal and a new trial is stated as follows:

"In view of the newly-discovered evidence pointing to the probability that some other person committed the crime of murder in taking the life of Robert Kenyon and pointing to the further probability that a new trial would bring a different verdict."

In support of her motion, the defendant filed three affidavits showing that either on June 22d at about 10 o'clock in the forenoon or a little later, or on June 23d at about 11 o'clock in the forenoon, a man with a burlap sack or a bundle was seen going toward or from the Au Gres river where the boy's body was found. The boy was last seen alive *about 4 p. m., June 22d.* The presence of some unknown person in the vicinity where the body was found, at about 11 o'clock in the forenoon on June 22d or at about the same hour of the day on June 23d, carrying a burlap sack, does not weigh heavily as against defendant's voluntary confessions. There was testimony that the deep hole in the river was found to harbor large turtles, when drained in searching for the body. It might as plausibly be argued that the burlap sack carrier was taking turtles for food or the market, as to conclude that

he was thus rather openly carrying a dead body in the daytime where three witnesses saw him. While claiming this unrecognized man was furtive in his movements, these affiants failed to explain their delay in not disclosing their knowledge for more than four years. These newly-discovered witnesses were either relatives or friends of the defendant, interested in her release, yet it is claimed their testimony was not discovered until four years after the crime was committed. The circuit judge was not guilty of any abuse of discretion in denying a new trial on this asserted ground.

3. Defendant's further showing of newly-discovered evidence consisted of an affidavit stating that Nellie Brooks (the people's main witness) had said that she supplied the defendant with money, intoxicating liquors and cigarettes before the confession, that she could get the defendant a lot of money for her story if sold, that the confession was obtained by trickery. The record does not sustain the claim that cigarettes, liquor or money had any bearing on the truth or claimed falsity of the confession. Nellie Brooks was the people's witness who started the chain of events resulting in the confession. As to the conduct of Nellie Brooks in aiding in obtaining the confession, the facts are claimed to be as follows: Nellie Brooks was a neighbor of defendant, for whom defendant and her husband occasionally worked. She testified that when it was reported that a certain man had died after confessing the murder, the defendant asked her (Mrs. Brooks) "if I believed it was so and I said I did. Several times she mentioned it to me and I to her and she said, 'If you believe that I can tell you a lot about the Kenyon case,' and she told me different things." After that, the de-

fendant frequently mentioned the Kenyon murder case to Mrs. Brooks, said she could write a story about it, that she could tell all about it. Mrs. Brooks reported this to the State police, was instructed to write down what defendant told her. The defendant wrote a story of the Kenyon case that she wanted published, claimed she could get $500 for it. She told Mrs. Brooks of having been sleepless the night after the crime was committed, having dug up a knife out of her garden the next morning and burning it up. In February, 1940, Mrs. Brooks, with the defendant, and a sergeant of the State police went to the Bay City State police post, the defendant expecting to make arrangements with a publisher for her story. Defendant's "story" gave intimate details of certain facts indicating an accurate knowledge of the crime. On that occasion, the defendant confessed to Mrs. Brooks that she killed the boy. Mrs. Brooks testified as to what occurred at the State police post in Bay City on that occasion in February, 1940:

"*Q.* Well, never mind what you were asked— tell what you did—tell what happened after the sergeant left you alone with Mrs. Moshier after 9 o'clock.

"*A.* (Mrs. Brooks) I asked Mrs. Moshier if she would go to Lansing with me and she said she would not.

"*Q.* And why not?

"*A.* She said because she would not go on the lie detector. I told her she had nothing to fear and she said, 'I am not going because I cannot beat it.'

"*Q.* And then what did she tell you?

"*A.* She asked me to sit down and I did and she said, 'Nellie, I killed Bobby Kenyon.'

"*Defendant:* I never killed him.

"*Q.* And what did you say then, what happened then?

"*A.* I said, 'Winnie, are you telling me the truth?' and she said, 'Yes, I killed Bobby Kenyon and I want to confess; I want to tell everything.'

"*Q.* And then what?

"*A.* I asked her to sit down beside me and she did and I said, 'Winnie, if that is the truth will you tell it to the sergeant?' and she said, 'Yes,' and I went and called the sergeant. I then left the room."

A complete confession of the crime was then made by the defendant, and taken by the State police. We see no reason to doubt the truth of the confession. It bears all the indicia of truth, was signed by the defendant in the presence of three witnesses. Subsequently an additional statement was taken by the sergeant, reduced to writing, signed by defendant before witnesses, giving at length the details of the crime. The jury believed the confessions to be true. In short, the defendant confessed that the boy had been calling her names, throwing stones at the cows. She had told him to stop—he "sassed" her. They were going to adjoining pastures after cows. She took a butcher knife with her to the pasture. She stated:

"He called me son-of-bitches, and cock sucker, and bastards, and I told him to stop throwing stones at the cows, and he wouldn't, started calling me names."

She slapped him—he struck her on the arm—she threw him on the ground, used the butcher knife, and put the body in a deep hole in the Au Gres river. It would be difficult to believe that the crime had been committed by the defendant in the manner admitted by her, except that the record plainly indi-

cates that she was of low mentality, bordering on feeble-mindedness, a mental and sexual moron.

The claim that the confession was obtained by fraud and trickery was fully advanced by defendant's counsel in cross-examination and in defendant's testimony before the jury—in fact, it appears to have been about the only defense that was offered to overcome the effect of defendant's having confessed the crime in detail to the State police. Nellie Brooks and the defendant were both sworn and testified before the jury. Their testimony was squarely contradictory. The jury is the sole judge as to the credibility of witnesses. The jury heard the testimony of these witnesses, of the State police officers who obtained the confession, and others who corroborated the people's claim of guilt. It is not for this court to say that the jury erred in accepting the defendant's confession as true. The issue was adequately before the jury, whether to believe the defendant's detailed confession of the crime, or her subsequent testimony at the trial that it was merely a story she concocted at Nellie Brooks' suggestion. The court did not err in refusing to set aside the verdict, and in denying a new trial, on this asserted ground.

The defendant urges that the trial court abused its discretion in refusing to grant a new trial, because "the weight of the evidence is against the verdict of the jury." It is claimed that the conviction is based upon admissions (confessions) made by a defendant of low mentality, under the domination of an intelligent third person interested in collecting a reward. It is not for this court to say how we would have rendered a verdict had we been the jurors. The jury heard and saw the witnesses and observed their demeanor; and the jury is the judge of the credibility to be given their testimony. The testi-

mony supports the finding that the defendant was guilty, beyond a reasonable doubt, accepting the testimony of the people as true.

The granting of a new trial rests largely in the sound discretion of the trial court. We find no abuse of discretion in this case in the denial of the motion. Under such circumstances, the verdict will not be disturbed.

Conviction and sentence affirmed.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.