PEOPLE *v.* LOUZON.

1. CRIMINAL LAW—IDENTIFICATION OF ROBBERS—EVIDENCE.

   The credibility of testimony of theater janitor who was over-
   powered incident to robbing safe and who identified the accused
   as his assailants *held,* for the jury under evidence presented
   as to statements he had made as to inability to identify the
   robbers shortly after the robbery.

2. SAME — CONFESSIONS — VOLUNTARINESS — PRELIMINARY    EXAMI-
   NATION.

   It was proper for trial judge in prosecution for robbery to con-
   duct a preliminary examination in the absence of the jury to
   determine the voluntary character of confessions prior to their
   admission to the jury.

3. SAME—CONFESSIONS—VOLUNTARINESS—EVIDENCE.

   Reception in evidence of 2 confessions by 1 of 3 defendants in
   prosecution for robbery and submitting question of their vol-
   untary character to jury *held,* proper, in view of conflicting
   testimony.

4. SAME—CONFESSIONS—PRELIMINARY EXAMINATION.

   Preliminary testimony which makes it clear that the confession of
   one charged with crime was voluntary imposed a duty upon
   the trial court to admit it; that it was involuntary, to reject
   it; that it was doubtful as to whether or not it was voluntary,
   to admit it and have question of voluntariness submitted to jury
   under proper instructions.

5. SAME—INTERROGATION OF SUSPECTED PERSONS.

   Interrogation by police officers of persons suspected of crime has
   social value in the solution of crime as the duty to disclose
   knowledge of crime rests upon all citizens, the limits of the

REFERENCES FOR POINTS IN HEADNOTES

[2, 4] 20 Am Jur, Evidence § 534.
[2, 4] Duty of court to institute preliminary investigation as to
   voluntary or involuntary character of confession.   102 ALR 605.
[3–7, 9, 10] 20 Am Jur, Evidence § 480 *et seq.*
[8, 15] 58 Am Jur, Witnesses § 36 *et seq.*
[12] 31 Am Jur, Jury § 107.

inquiry being dependent upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.

6. Same—Confessions—Physical Coercion—False Promises.
Confessions are inadmissible when secured by inflicting physical force or its equivalent by means of harsh or cruel treatment or false promises.

7. Same—Confessions—Voluntariness.
A confession, to be admissible, must be voluntary, but need not be volunteered.

8. Same—Constitutional Law—Protection Against Self-Incrimination.
No one may be forced to be a witness against himself in a criminal case (Const 1908, art 2, § 16).

9. Same—Confessions—Supreme Court.
The Supreme Court will examine the record on appeal to determine whether the trial judge and jury are both wrong in determining that a confession was voluntary if it finds the finding of the trial court in such matter was against the great weight of the evidence.

10. Same—Confessions—Preliminary Examination—Voluntariness—Instructions.
The confessions made by 1 of 3 persons charged with committing a robbery were properly admitted as against the confessor, where trial court conducted a preliminary examination out of the presence of the jury, admitted them in evidence, submitted matter of voluntariness to the jury and restricted their use to proof of guilt of the confessor alone inasmuch as the other 2 accused did not confess and statements implicating them were not made in their presence and Supreme Court does not find that finding of voluntariness was against the great weight of the evidence.

11. Same—Robbery Armed—Conviction of Lesser Offense—Robbery Not Armed.
Conviction of lesser crime of robbery not armed was not error on charge of robbery armed.

12. Same—Voir Dire Examination.
Trial court's refusal to permit submission to jury on *voir dire* examination of questions as to whether jury would be prejudiced if it were to develop that any 1 or all of the 3 defendants, charged with robbery armed, had been convicted of former offenses and whether guilt or innocence could be determined solely on facts presented entirely uninfluenced by evidence of

former police records *held*, proper, where defense attorneys brought out records of former convictions and a fair charge was given by the trial judge, since the jury could consider the character of men with criminal records in judging their credibility as witnesses; the questions not being complete.

13. Same—Robbery Not Armed—Great Weight of Evidence.
Convictions of 3 defendants of robbery not armed *held*, not against the great weight of the evidence.

14. Same—Robbery—Charge of Court.
Charge of the trial judge in prosecution of 3 defendants for robbery armed and in which they were convicted of robbery not armed *held*, to have been a very fair charge.

15. Same—Defendant as Witness.
The defendant in a prosecution for crime is not obliged to take the witness stand.

16. Same—Alibi—Evidence.
Alibi on part of 1 of 3 defendants in prosecution for robbery armed and in which they were convicted of robbery not armed *held*, not established by testimony adduced.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 15, 1953. (Docket No. 78, Calendar No. 45,650.) Decided November 27, 1953. Rehearing denied February 18, 1954.

Edward Louzon, Richard Sen and Archie Long were convicted of robbery not armed. Affirmed.

*W. Newton Hawkins,* for defendants Louzon and Sen.

*Edward N. Barnard,* for defendant Louzon on application for rehearing.

*Lowery B. Hicks,* for defendant Long.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, *Ralph Garber,* Chief Assistant Prosecuting Attorney, and *Samuel Brezner* and *Samuel J. Torina,* Assistant Prosecuting Attorneys, for the people.

BUTZEL, J.   Edward Louzon, Richard Sen and Archie Long were tried together and found guilty of robbery not armed.   They appealed from the jury's verdicts, judgments entered thereon, and denial of motions for a new trial.

While at work at the Lancaster theater in River Rouge, Michigan, around 2 a.m. on March 26, 1951, Otto Agnew, a janitor, was overpowered by 3 men, 1 of whom pressed a hard round object against his body and made him open the manager's office.   Subsequently he was confined in the men's room and from there heard the hammering of the robbers in their attempt to open a safe.   The robbers worked rapidly and broke open a small safe and removed therefrom $676 placed there by the theater cashier. Before leaving the theater they bound Agnew with a cord from a vacuum cleaner.   They threatened him and stated they would kill him if he attempted to be a hero.   After their departure, Agnew managed to crawl to the door and call for assistance from a passer-by who summoned the police.

Immediately following the robbery Agnew stated to several witnesses that he could not identify the robbers, and that 1 had a paper bag over his head. At the trial he positively identified the 3 defendants as the men who had committed the robbery.   He testified that his earlier denial of ability to identify the 3 men was made because of the threats the men had made to him and his fear induced thereby.   He stated that he had been scared by the threats and was still scared.   He further testified that he had to go to the hospital a short time after the robbery because of a heart condition which he claimed was caused by his experience during the robbery.   The credibility of his testimony was to be judged by the jury.

It was not until 5:30 p.m. on April 11, 1951, that defendant Sen was arrested for investigation in regard to several crimes that had been committed in

River Rouge. He claims that he was interrogated that same evening but denied participation in any crime. He was questioned about 7 times while in custody. He requested permission to see his mother and also an attorney but was refused. His mother finally located him and she was also told that she could not see him until the investigation was completed. She was, however, finally permitted to see him about 6:30 p.m. in the evening of April 13, 1951, and later that same evening about 8:30 Sen signed a confession written up by 1 of the police officers. In it he implicated the other 2 defendants, who had also been apprehended. The following day all 3 defendants were taken to the prosecutor's office in Detroit where Sen made a very complete and full confession, stating in detail what occurred. In this second confession Sen stated that no promises had been held out to him; that his answers were free and voluntary; and that he was aware of his constitutional privilege not to answer the questions. Both Louzon and Long became very angry when Sen made this confession at the prosecutor's office and they were permitted to leave the room.

The trial judge properly conducted a preliminary examination in the absence of the jury to determine the voluntary character of the confessions prior to their admission to the jury. *People* v. *Prestidge,* 182 Mich 80; *People* v. *Dudgeon,* 229 Mich 26. Defendant Sen claimed that he volunteered to accompany the officers to the police station the afternoon they stopped him but after being interrogated he was pushed into a cell which had only a bench and a steel sheet for a bed. Sen testified that he was cold and could not sleep because the steel sheet was not provided with a mattress, a pillow, or blankets. He stated that the next morning he was served chili but received no spoon. He could not, or did not, eat the chili. The following day he was served eggs

and potatoes that were cold. He claimed that all the meals were unpalatable. He was able to drink the coffee. He made no claim whatsoever that any physical violence was used or that he was subjected to constant interrogation. The trial judge very carefully went into the details when Sen stated that the entire confession was untrue and that he signed in order to be released. Upon questioning, Sen admitted that he was responsible for the statement in the confession that he drove his car toward the Lancaster theater and turned into an alley and let Louzon and Long out of the car; also, that they all had "handkerchiefs over their faces." The absurdity of his claim that the confession was all made up by the officers is shown by these admissions. He also claimed that he signed the confession because the officers told him that they were after Louzon and Long and not after him as he did not have the record that the other 2 had. Sen further testified that the officers told him that they would try to get him off with probation. The judge pertinently asked him why he would want probation if he had committed no crime. At the conclusion of the preliminary examination the trial judge stated that both confessions would be received into evidence and the question of their voluntary character would be submitted to the jury. This was proper in view of the conflicting testimony, *People* v. *Crow,* 304 Mich 529; *People* v. *Cavanaugh,* 246 Mich 680; *People* v. *Dudgeon, supra.*

Many decisions are cited to the effect that confessions obtained through physical violence or intimidation through threat of harm, promises, inducements or hope of reward, or a method known as "sweating" are inadmissible. *People* v. *Brockett,* 195 Mich 169; *People* v. *Cavanaugh, supra; People* v. *Prestidge, supra.* Defendants rely upon *People* v. *Cavanaugh, supra,* wherein we condemned confes-

sions obtained through improper methods. But in that case we also stated:

"The police had testified that the confession was voluntary. Defendant had an undoubted right to lay before the jury his full claim of what the police said to him, and it was for the jury to say whether, under all the circumstances, the confession was voluntary."

In *People* v. *Prestidge, supra,* we stated at page 82:

"If the preliminary testimony made it clear either that the statement claimed to have been made was voluntary or involuntary, it was the duty of the trial court to admit or reject it. If the testimony left the question in doubt, it was the duty of the court to admit it, and leave the question to the jury under proper instructions to determine whether it was voluntarily made."

In *People* v. *Moshier,* 306 Mich 714, 721, we stated:

"Nellie Brooks and the defendant were both sworn and testified before the jury. Their testimony was squarely contradictory. The jury is the sole judge as to the credibility of witnesses. The jury heard the testimony of these witnesses, of the State police officers who obtained the confession, and others who corroborated the people's claim of guilt. *It was not for this Court to say that the jury erred in accepting the defendant's confession as true.* The issue was adequately before the jury, whether to believe the defendant's detailed confession of the crime, or her subsequent testimony at the trial that it was merely a story she concocted at Nellie Brooks' suggestion. The court did not err in refusing to set aside the verdict, and in denying a new trial on this asserted ground." (Italics supplied.)

It is true that the United States supreme court in capital cases has for many years condemned the

use of confessions where force, mental intimidation, promises, or inducements were held out to obtain the confessions, but in the most recent case of *Stein* v. *New York,* 346 US 156, 184 (73 S Ct 1077, 97 L ed 1522), the court, in the majority opinion, stated as follows:

"Interrogation is not inherently coercive, as is physical violence. Interrogation does have social value in solving a crime, as physical force does not. By their own answers many suspects clear themselves, and the information they give frequently points out another who is guilty. Indeed, interrogation of those who know something about the facts is the chief means to solution of crime. The duty to disclose knowledge of crime rests upon all citizens. It is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness. This Court never has held that the Fourteenth Amendment prohibits a State from such detention and interrogation of a suspect as under the circumstances appears reasonable and not coercive.

"Of course, such inquiries have limits. But the limits are not defined merely by calling an interrogation an 'inquisition,' which adds to the problem only the emotions inherited from medieval experience. The limits in any case depend upon a weighing of the circumstances of pressure against the power of resistance of the person confessing. What would be overpowering to the weak of will or mind might be utterly ineffective against an experienced criminal."

We believe that the judge properly submitted to the jury the question of voluntariness of the confessions and that there was no error.

. We recognize the rule that confessions are inadmissible when secured by inflicting physical force or its equivalent by means of harsh or cruel treatment or false promises. The confession must be voluntary, but this does not mean that it must be volunteered. No one may be forced to be a wit-

ness against himself.* It is argued that in times of hysteria or during a crime wave and particularly after a heinous crime has been committed, improper methods may be used to force a confession. The law affords ample protection against such an abuse. If it is apparent that improper methods have been used to force a confession, the judge will refuse to admit it into evidence. Even if he is satisfied that the confession was not improperly obtained, but there is some question, he will leave it to the jury to determine whether it was voluntary or not. If the judge and the jury are both in error, this Court on appeal will examine the record. If we find that the finding of the trial court is against the great weight of the evidence, it becomes our duty to reverse and order a new trial. We find no reason to reverse in the present case.

The confessions of defendant Sen were admissible as evidence only against him. The court properly instructed the jury, stating:

"First of all, it is a confession only as to Sen and must not be regarded as any proof of guilt on the part of the other 2 defendants, because they didn't confess, and this statement was not made accusing them in their presence."

In *Stein* v. *New York, supra,* 1 of the 3 codefendants did not confess. The trial court denied a motion by this defendant that all references to him in the confessions be stricken from them. The New York court of appeals affirmed without opinion. The United States supreme court stated at page 196:

- "Perhaps the methods adopted by the New York courts to protect Wissner against any disadvantage from the State's use of the Cooper and Stein confessions were not the most effective conceivable. But 'its procedure does not run afoul of the Four-

---

* See Const 1908, art 2, § 16.—Reporter.

teenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar.' *Snyder* v. *Massachusetts,* 291 US 97 (54 S Ct 330, 78 L ed 674).

The trial court in admitting the confessions under the instruction that they were to be considered as evidence solely against Sen followed the established procedure in this State. *People* v. *Roxborough,* 307 Mich 575, and citations therein.

Error is claimed because the charge against the defendants was robbery armed and they were convicted of a lesser crime of robbery not armed. There was no error in convicting defendants of this lesser offense. *People* v. *Rose,* 268 Mich 529; *People* v. *Bradovich,* 305 Mich 329.

Defendants further claim that there was error of the court in not permitting the following 2 questions to be submitted to the jury on the voir dire examination:

"If, in the course of this trial it were to develop that any 1 or all of these defendants had been convicted of former offenses, would that fact prejudice you against them in any degree?

"Do you feel that you can determine the guilt or innocence of these defendants on a basis solely of facts presented here pertaining to this case only, and be entirely uninfluenced by any evidence of former police records?"

These questions left out an important element. Undoubtedly the jury could consider the character of men with criminal records in judging their credibility as witnesses. If previous convictions of the defendants were brought out during the trial, the jury could consider this in evaluating the credibility of the defendants as witnesses. Had the questions been complete, the probability is that the jury might have answered that it would affect their opinion as

to the credibility of the defendants as witnesses. The prosecutors refrained from examining the witnesses in regard to their former convictions. The past records were brought out by defendants' own attorneys not by the prosecutor. The judge gave a very fair charge in regard to former convictions, et cetera, and defendants were not prejudiced through the refusal of the court to permit the asking of these questions on the voir dire.

Further error is claimed on the ground that the verdicts were against the great weight of the evidence and because of the charge of the judge. We believe that the convictions were not against the great weight of the evidence and the judge gave a very fair charge.

Defendant Long did not take the stand nor was he obliged to. He and the other defendants attempted to establish alibis as to their whereabouts during the late hours of night or early hours of the morning of March 25 and 26, 1951, almost 10 months prior to the trial of the case. These alibi witnesses did not impress the jury.

The register of a motel was introduced into evidence wherein it appeared that Long signed the names of "Mr. and Mrs. Archie Long" some time after midnight on March 26, 1951. A witness testified that she met defendant Long at about 2:40 a.m. in response to his phone call at 2:25 a.m. They arrived at the motel at 3:00 a.m. and left shortly thereafter. Inasmuch as the police released Agnew between 2:00 and 2:30 a.m., when the robbers had already fled, there was ample time for Long to meet this woman after the robbery occurred. The testimony did not establish an alibi on his part.

The convictions are affirmed.

Dethmers, C. J., and Adams, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.