PEOPLE v WRIGHT

Docket No. 107152. Submitted May 1, 1990, at Detroit. Decided
    October 8, 1990; approved for publication November 9, 1990, at
    9:03 A.M. Leave to appeal sought.

Rodney A. Wright was convicted of second-degree murder and
    possession of a firearm during the commission of a felony
    following a bench trial in Detroit Recorder's Court, Kaye
    Tertzag, J. He appealed, contending the trial court erred in
    denying his motion to suppress his exculpatory statement to
    the police because his right to counsel was violated when the
    police did not inform him that an attorney retained by his
    family was at the station, and that this conduct by the police
    rendered his statement involuntary.

    The Court of Appeals *held:*

    The failure of the police to inform the defendant, before he
    gave his statement, that an attorney retained by the defen-
    dant's family was present at the police station neither violated
    the defendant's right to counsel nor rendered his statement
    involuntary. The defendant voluntarily, understandingly, and
    knowingly waived his rights before giving the statement. The
    trial court's decision to admit the statement was not clearly
    erroneous.

    Affirmed.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, *Timothy A. Baughman,* Chief of
Research, Training, and Appeals, and *Jeffrey Ca-
minsky,* Assistant Prosecuting Attorney, for the
people.

State Appellate Defender (by *Rolf E. Berg*), for
the defendant on appeal.

Before: CAVANAGH, P.J., and MCDONALD and
MARILYN KELLY, JJ.

Per Curiam. Following a bench trial, defendant was convicted of second-degree murder and possession of a firearm during the commission of a felony. MCL 750.317; MSA 28.549; MCL 750.227b; MSA 28.424(2). He appeals as of right. We affirm.

On appeal, defendant claims the trial judge erred in denying his motion to suppress his exculpatory statement made to police. He contends that his right to counsel was violated and that police conduct rendered his statement involuntary.

Defendant was arrested at about 5:00 A.M., five hours after the shooting. He was kept in various lockups that were without sleeping facilities. At 10:55 A.M. he was given his Miranda[1] warnings. He was informed that an attorney would be provided for him if he wanted one. He did not ask for an attorney. Defendant indicated he understood his rights and waived his right to counsel. The police denied defendant's requests to telephone his family.

Defendant consented to a search of his house. The investigating officer conducted the search and interviewed other witnesses before taking defendant's statement. While defendant was in custody, an attorney retained by his family went to the police station. He was told that defendant had been informed of his rights and did not wish to speak to an attorney. At 3:55 P.M., defendant gave an exculpatory statement to police. After the statement, the police told him that the attorney was at the station. Defendant was given only a can of juice and some water during the eleven hours of custody.

Defendant argues that the failure of the police to tell him earlier that an attorney was present interfered with and violated his right to counsel

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

under the Michigan Constitution. Const 1963, art 1, § 17.

The United States Supreme Court ruled on a factual situation nearly identical to this one in *Moran v Burbine,* 475 US 412; 106 S Ct 1135; 89 L Ed 2d 410 (1986). Considering the Fifth and Sixth Amendments of the federal constitution and due process guarantees, it held the police need not inform a suspect of an attorney's efforts to reach him. To constitute a valid waiver of his constitutional rights, it must be determined (1) that a suspect's decision not to rely on his rights was uncoerced, (2) that he knew he could stand mute and request a lawyer, and (3) that he was aware of the state's intention to use his statement to obtain a conviction. *Moran,* 422-423.

However the Supreme Court recognized that individual states are free to adopt different requirements for police conduct as a matter of state law. *Moran,* 428. Defendant urges us to impose a stricter standard on police conduct under the Michigan Constitution.

To support this proposition, defendant relies on *People v Cavanaugh,* 246 Mich 680; 225 NW 501 (1929). The defendant in that case was not only denied an opportunity to speak with his father and with a priest, he was not allowed to send for or employ counsel. *Cavanaugh,* 688. The *Cavanaugh* case was decided before federal due process guarantees against involuntary confessions were ruled applicable to the states. Further, the Court in *Cavanaugh* did not hold that the defendant's confession was involuntary and therefore inadmissible. It ordered a new trial, because defense counsel was not allowed to examine witnesses concerning the circumstances surrounding the confession. *Cavanaugh,* 689.

The Sixth Amendment of the federal constitu-

tion guarantees the right to counsel in all criminal prosecutions. The Fifth Amendment right to counsel is a corollary to the amendment's stated right against self-incrimination and due process. *People v Buckles,* 155 Mich App 1, 5 n 6; 399 NW2d 421 (1986). The interrogation was not a criminal prosecution and thus involves the Fifth Amendment right. The Michigan Constitution's self-incrimination guarantee is construed no more liberally than the federal guarantee. *People v Burhans,* 166 Mich App 758, 761; 421 NW2d 285 (1988). We decline to apply a more stringent standard than that in *Moran.*

Next, defendant argues that the totality of the circumstances tended to sap his power of resistance and self-control and rendered his statement involuntary.

Compliance with *Miranda* is necessary to establishing that a defendant's waiver was knowing and intelligent, but it is not dispositive of the voluntariness issue. *People v Godboldo,* 158 Mich App 603, 605-606; 405 NW2d 114 (1986). In determining the voluntariness of a statement, the trial court should consider all the circumstances, including the duration of detention and questioning, the defendant's age, intelligence, education and experience. It should consider his mental and physical state, whether he was threatened or abused, and whether there was unnecessary delay of arraignment. *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988). Intoxication from alcohol can affect the validity of a waiver, but is not dispositive. *People v Leighty,* 161 Mich App 565, 571; 411 NW2d 778 (1987), lv den 430 Mich 895 (1988).

When reviewing a trial court's determination of voluntariness, we examine the entire record and make an independent determination. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709

(1972); *People v Stricklin,* 162 Mich App 623, 635; 413 NW2d 457 (1987). Great deference is given to the trial court's assessment of the credibility of the witnesses. *People v Marbury,* 151 Mich App 159, 161; 390 NW2d 659 (1986). The trial court's findings will not be reversed unless clearly erroneous. *People v Kvam,* 160 Mich App 189, 196; 408 NW2d 71 (1987).

Defendant was drinking intoxicants before the shooting and had not slept. During the eleven hours in custody, he was given no place to lie down and no nourishment other than juice and water. He was not allowed to speak with his family until after he made a statement. He was urged to give some reason why he should not be charged with first-degree murder.

However, defendant did understandingly and knowingly waive his rights. He had a high school education, advanced training in the army, and other vocational training. The police reiterated his rights to him orally before he made his statement. Defendant testified that, at and up to that time, he wanted to give his version of the events.

We do not condone or encourage police conduct such as that which occurred in this case. However, we agree with the trial court's conclusion that here the statement was voluntary. Notwithstanding the circumstances, at the time defendant gave the statement, he still wanted to talk to the police. The decision to admit the statement was not clearly erroneous.

Affirmed.