McCORMACK, J.
odissenting). I respectfully dissent from the majority’s decision to use this case as a vehicle for overruling People v Bender, 452 Mich 594; 551 NW2d 71 (1996). While I agree with the majority that “stare decisis is a principle of policy rather than an inexorable command,” I do not find adequate reason to depart from the “preferred course” of leaving Bender’s settled precedent intact. Robinson v Detroit, 462 Mich 439, 463-464; 613 NW2d 307 (2000) (internal quotation marks omitted). First, I do not share the majority’s confidence that the rule recognized in Bender lacks a constitutional basis. Rather, I agree with Justice CAVANAGH that this rule is well moored in Article 1, § 17 of the Michigan Constitution, with its jurisprudential roots set in People v Cavanaugh, 246 Mich 680; 225 NW 501 (1929). I appreciate and, in certain respects, share the majority’s dissatisfaction with Bender’s fractured treatment of this issue; none of the shortcomings I see in the opinion, however, are sufficient to undermine the substantive integrity of its conclusion or render it “wrongly decided.”
Nor, in my mind, would any other consideration favor disruption of that precedent.[1] As Justice CAVANAGH *286 aptly explains, in the nearly twenty years since Bender was decided, there has' been no indication that its straightforward rule has defied practical workability in any respect, or has produced the “mischief” and harm of which the prosecution and majority warn.* [2] Rather, by now removing this simple and settled rule, the majority works an undue detriment upon the constitutional protection long recognized by this Court and relied upon by the people of Michigan: that should they find themselves detained as suspects of a crime, they will not be held incommunicado from those who have been retained or appointed to advise them. And I see no changes in the law or facts that render Bender’s recognition and implementation of this principle no longer justified. To the contrary, our current debate over the propriety of that rule simply echoes the one taken up by the Bender Court years ago; its contours have remained the same, as have the arguments and authority offered by each side in support. The Justices involved have changed (for the most part), but of course that does not warrant disturbance of our precedent.
*287 I do, however, see one meaningful difference between the instant case and Bender, and it too counsels against the majority’s chosen course. As the majority stresses, there was no dispute in Bender that the defendants made their incriminating statements to the police without requesting or even expressing interest in securing the representation of counsel beforehand. Nonetheless, those statements were suppressed because the police did not inform the defendants of the counsel that their parents had unilaterally decided to retain for them. This fact animated the Bender dissent’s chief objections to that decision’s per se rule, shared by the majority here: that it permits suppression of confessions based strictly on circumstances beyond the cognizance and apparent concern of the suspect, the individual to whom the constitutional rights at issue belong. See Bender, 452 Mich at 649-650, 656 (BOYLE, J., dissenting).
The instant case, however, is not Bender, and these concerns are not implicated. For, unlike the defendants in Bender, the defendant’s incriminating statements in this case only came after he repeatedly expressed his desire for counsel but to no avail. The first request came when the defendant was initially taken into custody on the morning of October 17, 2011. Upon being read his rights, the defendant indicated that he would not waive them and requested that counsel be provided to him. The interrogating detectives acknowledged the request but nonetheless continued to press him into talking; the defendant, however, again asserted his right to counsel, reiterating, “I would like a lawyer for consultation.” The defendant was then returned to lock-up, and heard nothing further regarding his requests. His next request came the following day, when the jail administrator came to see the defendant in response to his statement to a mental health worker that he “had some things he wanted to get off of his chest.” When the administrator asked if the defendant *288 “want[ed] to talk to somebody,” the defendant said yes, and asked, “[C]an you get me an attorney?” After telling the defendant that procuring an attorney was not his job, the administrator offered to get the detectives instead— the same ones from whom the defendant had already requested counsel. The defendant acquiesced. The defendant’s interest in the assistance of counsel was sufficiently clear at this time that the jail administrator and police contacted the county prosecutor, who arranged for counsel to be appointed and sent to the jail. Nonetheless, at no point during his custody was the defendant given any indication that his rightful requests for counsel would ever, in fact, be honored, regardless of whom or how often he asked — let alone that such counsel had been appointed and was readily available to assist him.
It was under these circumstances that the defendant’s waiver of rights and incriminating statements were made. The defendant stressed these circumstances in arguing for suppression,[3] and they, in turn, drove the trial court’s determination to that effect:
*289 Given these facts, the attorney was there, the police knew it, he was not permitted to go back and see his client.... [The defendant], who had once invoked his right to remain silent and had indicated at least on the 18th with knowledge to the police officials that he might possibly be interested in an attorney, was not told that one was there waiting for him. Based upon that, I will grant the motion of the Defendant to suppress [his] confession . .. . ***[4]
*290 Both the defendant and the trial court focused on Bender as the legal basis for this conclusion, and fairly so, as its settled and straightforward rule plainly sweeps these circumstances within its scope. The defendant’s frustrated attempts to invoke his right to counsel, however, just as plainly implicate Cavanaugh, which sits at the core of Bender’s rule and persists wholly intact without it. Taking Bender off the books thus does little to resolve the actual evidentiary question at issue in this case: whether the defendant’s statements should be suppressed on constitutional grounds.[5] Bender’s rule, while certainly sufficient to sustain this relief, is not necessary to it. The majority may disapprove of that rule, but Bender is not the case before us, and I fail to see how the instant case invites or enables the majority to act on that disapproval as they have. Accordingly, I cannot join in the majority’s decision to reach beyond the facts of this case to overrule Bender’s settled and sound precedent.

 Justice Cavanagh applies Petersen v Magna Corp, 484 Mich 300, 317-320; 773 NW2d 564 (2009) (opinion by Marilyn Kelly, C.J.), to reach this same conclusion. While I do not likewise rely on that case or framework, I find that much of the substance of his reasoning applies with equal force under the governing standard set forth in Robinson. See Robinson, 462 Mich at 464 (explaining that, before this Court overrules *286 a precedent it deems “wrongly decided,” it “should also review whether the decision at issue defies ‘practical workability,’ whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision”).

 Indeed, I, like Justice Cavanagh, have difficulty seeing how a rule requiring police to inform suspects of their counsel’s availability might produce any sort of detriment with which our society should be duly concerned. I have even more difficulty with the majority’s suggestion that such a rule might harm those suspects themselves, because “police officers and prosecutors will almost certainly be more reluctant to facilitate counsel before one is legally required if the consequence is the suppression of evidence.” Ante at 249 n 37. It is, of course, the deliberate concealment of counsel, not the facilitation of it, that merits suppression under Bender. Bender’s rule would thus only discourage the police and prosecution from assisting in the procurement of counsel if they planned to withhold that counsel from the suspect — which would be a peculiar form of “facilitation” from the suspect’s perspective, to say the least, and one not likely to be missed.

 The majority notes that defense counsel conceded before the trial court that the defendant’s eventual waiver of his Miranda rights was “made voluntarily.” It is entirely clear, however, that counsel did not intend this concession to suggest that the defendant’s unrequited requests for counsel bore no improper influence over his subsequent waiver and confession; rather, counsel consistently emphasized these requests and how they made suppression all the more warranted here than in Bender — a proposition, as discussed below, with which the trial court appeared to agree. See Defendant’s Brief in Support of Motion to Suppress Statement (explaining that, unlike in Bender, the defendant here invoked his right to counsel, “mak[ing] the police officers!’] actions of not informing the Defendant that an attorney had been appointed to represent him and was present at the jail when they gave him Miranda rights, all the more curious”); Evidentiary Hearing Closing Argument by Defense Counsel (stressing at the outset of his closing argument in favor of suppression that “once [the defendant] invoked his right to an attorney he never really received a benefit from it”; arguing further that the defendant’s “case is even stronger than” Bender because, inter alia, when the prosecutor was contacted, resulting in appointment of counsel, “it’s *289 uncontested that there was a request for a lawyer”; and questioning the prosecution’s suggestion that appointed counsel “was only on standby,” to be made available only “if [the defendant] guessed after asking for a lawyer twice that somehow one would be there for him”).

 Accordingly, I cannot agree with the majority’s characterization of the trial court’s ruling as simply that the “defendant’s statement required suppression under Bender, because the police officers had failed to inform him that an attorney was present at the jail and had established contact with the officers.” Ante at 206. While this failure was certainly enough in itself to warrant suppression under Bender, it is apparent that the trial court also found significant that this failure came in the face of the defendant’s repeated requests for counsel. Similarly, the majority states that the trial court ruled that the defendant “affirmatively reinitiated contact with police officers on October 18, 2011, without reasserting his right to counsel.” Ante at 206. While the majority may be comfortable with that conclusion, I see no determination by the trial court to that effect. Rather, the court recognized, as described above, that the jail administrator came to speak with the defendant upon hearing of his desire to “get something off [his] chest”; “the first thing that [the defendant] brings up is he asked if [he] could get an attorney”; the administrator declined and offered to get the detectives instead; and the defendant “seemed to understand that and was agreeable for him to get the detectives.” Nor, given these circumstances, did the trial court put much stock in the prosecution’s “no good deed goes unpunished” lament — echoed by the majority here — that counsel’s appointment was simply a precautionary measure, voluntarily undertaken and wholly conditional upon whether the defendant (yet again) asked for it. Instead, the court stressed that, although the detective, “and I’m not picking on him, . . . talks about [the attorney] being there only if needed,” there was no confusion among the detectives and the jail administrator that the attorney had been sent for the defendant, and the attorney, while perhaps unsure of the defendant’s name at that time, “knew he was there to talk to somebody and represent them regarding possible charges of murder or homicide that would be filed . . . against them.”

 Despite their prominence in both the defendant’s arguments and the trial court’s ruling, the majority pays little mind to the defendant’s requests for counsel, summarily suggesting that they were constitutionally meaningless and left the defendant here no differently situated than the defendants in Bender, The majority even holds this case out as emblematic of “the problems with Bender,” as “the prosecutor, on behalf of the people, was effectively sanctioned by the suppression of defendant’s voluntary statements for having taken the precaution of seeking out counsel in the event that defendant requested counsel before or during his interrogation.” Ante at 249 n 37.1, like the trial court, cannot so easily disregard the defendant’s requests for counsel. The record here paints a substantially different and more complicated picture than the one now offered by the majority — one in which counsel was procured because, indeed, the defendant affirmatively desired and repeatedly asked for it, and in which the prosecution and police have been “sanctioned” not for acknowledging those requests, hut for failing to duly honor them. The trial court saw significance in these complications; in light of its due reliance on Bender, however, it was not required to take up the full range of their constitutional import. With Bender now gone, I would leave that assessment to the trial court in the first instance, if and when the defendant again seeks suppression of his statements on a constitutional basis, state or federal, that demands it.