PEOPLE v. CLEVELAND.

1. CRIMINAL LAW—EVIDENCE—CONFESSIONS.
   That confession itself indicates that it was voluntary one would
   not be sufficient to entitle it to be received in evidence had
   improper means been used to secure it.

2. SAME—WITNESSES.
   Trial court properly refused to allow defendant to take stand
   in absence of jury for purpose of explaining how confession
   was secured.

3. SAME—WITNESSES—CROSS-EXAMINATION.
   Trial court properly ruled that if defendant took witness stand
   in presence of jury to explain how confession was secured, his
   cross-examination would not be limited to said subject.

4. SAME—CONFESSIONS—ADMISSIBILITY.
   Conditions under which confession is obtained should be care-
   fully scrutinized, and if it was obtained by force, duress,
   promises, threats, or by any other improper methods, it should
   be excluded.

5. SAME.
   Mere fact that defendant was suffering from severe physical
   injuries, and was under great excitement and strain, does not
   of itself render confession inadmissible.

6. SAME—VOLUNTARY CONFESSION ADMISSIBLE.
   Where defendant took stand in his own behalf, and neither
   denied confession nor claimed that it had been obtained by
   force, promises, threats, duress, or other improper means,
   but his testimony clearly shows that confession was volun-
   tary, it was properly received in evidence, and submitted to
   jury under proper instructions.

7. ARSON—FAILURE TO DIFFERENTIATE COUNTS NOT ERROR.
   Where, in prosecution for arson, information contained four
   counts, under all of which defendant would be guilty if he set
   fire to building, as he confessed he had done, there was no
   prejudicial error in trial judge's failure to differentiate be-
   tween various counts, especially in absence of any request
   therefor.

Reasons for exclusion of confession, see annotation in 18 L.
R. A. (N. S.) 768; 50 L. R. A. (N. S.) 1077.

Error to St. Joseph; Black (Edward D.), J., presiding. Submitted June 12, 1930. (Docket No. 108, Calendar No. 34,834.)   Decided October 3, 1930.

Chauncey Cleveland was convicted of arson. Affirmed.

*Hagerman & Miller* and *John C. D'Alton,* for defendant.

*Wilber M. Brucker,* Attorney General, *Lawrence H. Niendorf,* Prosecuting Attorney, and *James T. Sloan,* Special Assistant Prosecuting Attorney, for the people.

BUTZEL, J.   The defendant, Chauncey Cleveland, leased to tenants a garage owned by him in the township of Nottawa, county of St. Joseph, and State of Michigan.   The building was insured for $1,200, and the contents for $1,800, amounts, according to the testimony, far in excess of their actual worth.   Defendant worked for one Horace Calkins, an automobile salesman.   Defendant was in financial difficulties.   On the 4th day of March, 1929, without receiving any consideration whatsoever, he executed a chattel mortgage to Calkins for the sole purpose of warding off creditors.   The insurance was written by Harriett Calkins, wife of Horace. Although the premium was never paid, nor the policy delivered to defendant, nevertheless, defendant had been assured that the policy had been issued and had seen it on Mrs. Calkins' desk.   He had money on deposit at Mrs. Calkins' office.   It was not applied toward payment of the premium.

Defendant was informed against on the following four counts:   (1)   Arson of his own garage (2)

Arson of the building insured with intent to injure the insurer (3) Arson of personal property belonging to others (4) Arson of personal property.

The building and contents were badly damaged by an explosion shortly after midnight on the morning of March 15, 1929. Shortly thereafter, defendant was discovered covered with oil and gas in the immediate neighborhood of the building. He was suffering from a fracture of the skull, sinus, and frontal bone. His eyes were swollen, his nose and left ear were bleeding. He had a brain concussion of a short duration. Very early the same morning he was removed to a hospital at Three Rivers, Michigan, where opiates were given to him. Their effect wore off within six hours. From that time on, according to the testimony of the attending doctor, defendant was rational, and he showed no signs of any mental aberration, except that one nurse testified that if he talked very much, at times he would get confused. His head pained him a great deal. He was discharged from the hospital in two weeks.

Shortly after the fire occurred, Horace Calkins was arrested as an accomplice upon his confessing that he had assisted defendant in setting fire to the building, a guard was placed at the door of the latter's room at the hospital, and no one was allowed to enter except the doctor and the nurses. However, according to the testimony, defendant expressed no desire to see any one, nor did it appear that he believed he was under arrest or held *incommunicado*. A warrant was not issued for defendant's arrest until several weeks after he left the hospital.

At 6 o'clock in the evening of March 16, 1929, over 36 hours after the fire occurred, the assistant prosecutor, together with a court stenographer, interrogated the defendant. At first, defendant tried to

give a plausible explanation. When he was again interrogated two hours later, and after he had found out definitely that Calkins was under arrest, defendant in a coherent manner told the story, admitting his guilt. The questions and answers were taken down by the stenographer, and a transcript of the testimony read at the preliminary examination. Defendant seemed anxious to free Calkins, who had assisted him in bringing two cans of gasoline to the building. These defendant took into the building and emptied; and while the fumes were rising, on the application of a match, the explosion and fire resulted. The confession itself indicates that it was a voluntary one, but this in itself would not be sufficient to entitle it to be introduced in evidence, had improper means been used to secure it. *People* v. *Cavanaugh,* 246 Mich. 680. There is, however, no testimony whatever indicating that the confession was secured by force, promises, or threats, or that any duress was used. The jury returned a verdict of guilty, and the judge rendered a sentence of from 4 to 10 years.

It is claimed that the court erred in permitting the introduction of the transcript containing defendant's statement admitting the crime. Defendant's counsel, during the trial, after a number of witnesses had been sworn, and while the court stenographer who took down defendant's statement was testifying, asked that the jury be excluded and that defendant be allowed to take the witness stand in the absence of the jury and explain how the confession was secured. The court refused to do this. He properly ruled that defendant might testify in the presence of the jury, but that if he took the stand, his cross-examination would not be limited to the facts surrounding the obtaining of the confession. The court

stenographer testified fully as to the condition of
defendant, and what was said at the time when the
defendant made his statement.   The prosecutor
called the doctor and the nurses.   Defendant took
the stand in his own behalf.   He neither denied the
confession nor claimed that it was involuntary or
that force, promises, threats, duress, or other im-
proper means were used to obtain it.   He did state
that he was with Calkins, took a drink out of a
ginger ale bottle, and the next thing he remembered
was that he awoke in the hospital.   The confession
was obtained from him some 30 hours after the ef-
fects of the opiates had worn off.   Defendant did
complain that his head hurt him badly at the time
the confession was taken.   This would naturally fol-
low from his physical injuries if for no other reason.
The testimony plainly indicates that defendant's
statement was a voluntary one.   All the facts and
conditions showing how it was obtained, and the
facts showing defendant's physical and mental con-
dition, were presented to the jury.   The judge in-
structed the jury as follows:

"Now, there has been a statement introduced here
that was taken at the hospital, sometime, I think, on
Saturday following the claimed burning of the build-
ing.   And in regard to that statement, I charge you
that there is no testimony in the case that shows
there was any promise or reward or any threat or
duress or any compulsion or anything to cause the
respondent who made the statement to make the
statement.   In other words, if the statement were
made under duress or promise it would not be a good
statement, and it is for you as jurors to say whether
or not in your mind the statement that was made by
the respondent, was made at a time when he was
competent to make the statement—I mean mentally
competent.   Where that statement as made has dis-

puted the facts as they occurred on the night in question, that is for you as jurors to ascertain. If you believe the statement was made and the man was competent to make the statement, then you should take that into consideration in making up your verdict."

The conditions under which a confession is obtained should be carefully scrutinized. If it was obtained by force, duress, promises, threats, or by any other improper methods, it should be excluded. In the present instance, however, there is absolutely no claim whatsoever that the confession was an involuntary one, except it was shown that defendant had a fracture, or, according to the motion for a new trial, two fractures of the skull. According to the testimony, however, he was not incapacitated to make a statement. He had made no request to see any one, and, as far as the record shows, did not even know that he was under arrest. The mere fact that a defendant was suffering from severe physical injuries, and was under great excitement and strain, does not of itself render a confession inadmissible. *People* v. *Miller,* 135 Cal. 69 (67 Pac. 12) ; *Green* v. *State,* 96 Md. 384 (54 Atl. 104). Further cases may be found in the foot-notes to *Ammons* v. *State* (80 Miss. 592, 32 South. 9, 92 Am. St. Rep. 607), 18 L. R. A. (N. S.) 768, 788.

The court further instructed the jury that it was for them to ascertain whether the defendant set fire to the building. There was no prejudicial error in the judge's failure to differentiate between the four charges of arson with which defendant was charged on various counts. The undisputed testimony showed that defendant owned the building; that he owned personal property in the building; that there was personal property of others in the building;

that the building was insured, and that a fire caused by incendiarism would necessarily injure and defraud the insurer. By setting fire to the building, defendant necessarily would be guilty of each one of the counts. No request to charge was made by defendant's counsel, nor was the court asked to define and explain the various counts. No motion was made to compel an election of counts, nor could it have been properly granted.

The same question arose in *People* v. *Cabassa,* 249 Mich. 543, where the court quoted *People* v. *Sweeney,* 55 Mich. 586:

"When distinct offenses are charged in different counts, but are committed by the same acts, at the same time, and the same testimony must necessarily be relied upon for conviction, the prisoner cannot be confounded in making his defense, and the people ought not to be compelled to elect.".

The other claims of error are not stressed; even if there were any merit to them, they are nonprejudicial.

The judgment of the lower court is affirmed.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.