PEOPLE v FALLS

1. CRIMINAL LAW—EVIDENCE—CONFESSIONS—EXCLUSION—WALKER HEARING.

   A defendant is entitled to a *Walker* hearing at which the most searching examination of all of the circumstances surrounding his alleged confession will be permitted; if the confession was obtained by force, duress, promises, threats, or by any other improper method, it should be excluded.

2. CRIMINAL LAW—CONFESSIONS—VOLUNTARINESS—DRUG WITHDRAWAL—WALKER HEARING.

   A new evidentiary hearing is ordered to determine whether or not a defendant could have given a voluntary confession where at the original *Walker* hearing testimony indicated that the defendant appeared to be going through a slight withdrawal as a result of using cocaine and heroin; that the defendant made no statement prior to being given methadone; and that the methadone was obtained and given to the defendant at his own request, though perhaps with the hope on the part of the interrogating officer that he might talk but without any bargain being made that he would so do; and where nowhere does it affirmatively appear that the court at the original hearing gave any consideration as to how the administration of the drug might have affected the voluntariness of the statements made.

Appeal from Jackson, Charles J. Falahee, J. Submitted Division 2 October 2, 1973, at Lansing. (Docket No. 15021.) Decided November 28, 1973.

Maurice H. Falls was convicted of carrying a dangerous weapon in a motor vehicle. Defendant appeals. Remanded for further proceedings with instructions.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence § 582 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Allan C. Miller,* Assistant State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and BRONSON and CARLAND,* JJ.

CARLAND, J. Defendant was convicted in a jury trial of carrying a certain dangerous and offensive weapon in a motor vehicle while not having a license so to do, MCLA 750.227; MSA 28.424, and was sentenced to a term of from 3-1/2 years to 5 years in prison. He appeals his conviction and sentence.

On appeal defendant raises numerous issues only one of which merits consideration; therefore, this decision will be confined to this single issue only.

It is the claim of defendant that any confessions or admissions made by him to the investigating officers were not voluntarily, knowingly, and intelligently given.

To understand this contention certain of the underlying facts must be briefly stated. About 2 p.m. on the afternoon of January 10, 1972, defendant was arrested by the state police and ultimately taken to the Jackson county jail. The next day, January 11, 1972, a state police officer, Nystrom, went to the jail, contacted the defendant and after administering the *Miranda* warnings asked the defendant if he was willing to talk about the case and the following events and conversations took

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

place throughout the day according to the testimony at the *Walker* hearing subsequently held.

"I asked him if he was willing to talk to us about the case, and at that time he said that he was going through a withdrawal from using cocaine and heroin, and that he was not able to until he got some medication. He requested that I get him some methadone.

"He said that he would be willing to discuss the case as soon as he felt better, after getting some medication. So I told him that I would get back with him later. I also inquired as to whether or not he had seen a doctor in the jail, and I checked with the turnkey.

"He appeared that he was going through a slight withdrawal period—not bad. But I told him that I would make an effort to contact a doctor in his behalf. And during the noon hour I did contact Dr. Keeler, connected with the local Drug Abuse Council here in Jackson, and discussed the case with him, and he wrote a prescription for eight methadone tablets, which I picked up at the Chemist Shop in town—a drug supply —and billed them to the sheriff, at his request, and the dosage was two pills per day, and the doctor said that would last him four days and that should be enough. If it wasn't, and that he was still having withdrawal, to come back and he would possibly issue another prescription.

"I took the tablets with me, and at 2 p.m. I went back to the jail and picked up Falls and took him out to the Michigan State Police Post and took some fingerprints and pictures.

"I again—again advised him of the *Miranda* warnings that I just went over, being the same ones I just testified to.

"He stated that he understood them all.

"I gave him one—one of the tablets that the doctor prescribed, which was okayed by the doctor. He said that I could give him one, a later one in the afternoon. He wanted all eight of them at one time. I told him that he couldn't and that I couldn't give him them, because they were prescribed two a day. He became a little irritable that I wouldn't give him all eight. I told

him that I would leave the—the rest of them with the turnkey, which I did.

"I gave him another one just before we left the State Police Post, and that was two for the day, and I informed the turnkey that he had his quota for that day.

"While out to the State Police Post he did agree to talk to us without having an attorney present.

\* \* \*

"He did admit that he knowingly possessed the gun and the holster, but he would not say how long that he had had it. I—I told him that it was a stolen gun that had been reported stolen from the United Parcel Service in Detroit—terminal—along with a—a group of 45 guns, 30 taken at one time, and 15 another. He would not admit stealing the gun. He denied that it was stolen, and denied knowing that it was taken from interstate shipment."

At this same *Walker* hearing the defendant testified as follows:

"On one—one occasion when he was questionin' me—uh—I told him—uh—you know—that I was sick—you know—from withdrawal, and stuff, and—uh—he told me he would git me—uh—some methadone. And—uh—he kept askin' me did I have anythin' to say, and I said, 'Maybe if I'm feelin' better—you know—maybe I'll—you know—have something to say.' And after he got the methadone—he got me some methadone and he got me a Coca-Cola, and after I took it—uh—well, he questioned me and he asked me like my name and—uh—he questioned me about the automobile and things, and he asked me did I have a gun on me, and I told him no—you know—and he asked me about the gun—I mean about the automobile, and I told him that I borrowed the automobile in Detroit, which I did. And—uh—I tried to give him like the best information to *my* ability on how to investigate it and maybe to find out whether I borrowed the automobile or not.

"He told me that he's not—he wasn't interested in hearin' this here because he thought there was a fabrication. And when he called me a liar, I—you know—I

just shut up, I didn't say anything else, and he tried to question me thereafter, and I didn't say anything then."

"*Q.* Did you tell him at any other time that you wanted an attorney?

"*A.* I told him—each time that he came and got me I told him that I want to have an attorney present whenever he talked to me.

"And when they took me to—uh—arraignment, I guess, they assigned one attorney, and he told me if—if I didn't plead guilty, he will—uh—he told me if I didn't plead guilty, well,—uh—he wouldn't have time to take my case because he had to go on a trip, or somethin', and I told him I wasn't pleadin' guilty, and I didn't—uh —I didn't think he'd be able to serve me, and then I believe they appointed you.

"During the time of arraignment—uh—and each time that Officer Nystrom questioned me, he would be tryin' to coerce me into tellin' him somethin' about these crimes. Each time I would tell him no, and he was harpin' on like cuttin' the methadone off after he got the methadone for me, and like—uh—just like this was somethin' that he *did* for me—you know—that he didn't have to do, he went above and beyond his duty."

From the foregoing it is apparent that the *Miranda* warnings were given and that at the initial contact the defendant appeared to be going through a slight withdrawal as a result of using cocaine and heroin; that the defendant made no statement prior to being given the methadone; and that the methadone was obtained and given to the defendant at his own request, though perhaps with the hope on the part of the officer that he might talk but without any bargain being made that he would do so. This hope, if any, was engendered by the claimed statement of the defendant, "He said that he would be willing to discuss the case as soon as he felt better, after getting some medication". However, perhaps there is some significance to the fact that only after being given the metha-

done did defendant admit to having been knowingly in possession of the gun at the time of his arrest. On the other hand it should be noted that the defendant denied making any admissions or confessions even after receiving the medication. Neither did he claim that the methadone in any way influenced him in the making of any statement on the day in question.

Therefore, the determination of this case rests upon the answer to the following question. Was a confession given by defendant to interrogating officers where defendant confessed only after having taken methadone as disclosed by the evidence in this case voluntarily, wilfully, and intelligently made?

At the *Walker* hearing, although all the circumstances were before the court, nowhere does it affirmatively appear that the court gave any consideration as to how the administration of the drug might have affected the voluntariness of the statements made. It thus appears that the trial judge concluded the statement to have been voluntary without consideration of this vital fact.

To paraphrase the language used by Justice WIEST in *People v Cavanaugh,* 246 Mich 680; 225 NW 501 (1929), the defendant was and is entitled to a *Walker* hearing at which the most searching examination of all of the circumstances surrounding his alleged confession will be permitted. "The conditions under which a confession is obtained should be carefully scrutinized. If it was obtained by force, duress, promises, threats, or by any other improper methods, it should be excluded." *People v Cleveland,* 251 Mich 542, 547; 232 NW 384, 385 (1930).

The Court is of the opinion that a new evidentiary hearing ought to be conducted to determine

whether or not the defendant could have given a voluntary confession; it being recalled that the voluntariness of a confession is determined on the totality of the circumstances, *People v Stanis,* 41 Mich App 565; 200 NW2d 473 (1972).

Cause remanded for a further *Walker* hearing with full consideration to be given to the drug-related problem. If after such hearing the confession is determined to have been voluntary, the conviction is affirmed. If so affirmed, sentence should be reduced to three years and four months with appropriate credit being given for time served. In the event the confession is determined to have been involuntary, the conviction is reversed and new trial ordered.

All concurred.