PEOPLE v CUTLER

1. TRIAL—CRIMINAL LAW—SEQUESTRATION OF WITNESSES—JUDGE'S DISCRETION.

A request for sequestration of witnesses should ordinarily be granted; however, the grant or denial of such a request is a matter for the discretion of the trial court.

2. TRIAL—CRIMINAL LAW—SEQUESTRATION OF WITNESSES—DENIAL OF REQUEST—PREJUDICE.

A trial court's denial of a defendant's request to sequester witnesses was reversible error where there were 28 witnesses, a complex factual situation, some of the facts were in dispute, and the trial court gave no valid reason for refusing to sequester the witnesses; the Court of Appeals cannot under these circumstances say that the arguable questions of prejudice raised by the defendant are flimsy or harmless beyond a reasonable doubt.

3. APPEAL AND ERROR—CRIMINAL LAW—ADMISSIONS—VOLUNTARINESS.

A reviewing court must examine the entire record and make an independent determination when considering a finding by the trial court that a defendant's admission made to police was made voluntarily.

4. CRIMINAL LAW—CONFESSIONS—PHYSICAL INJURIES—VOLUNTARINESS—TOTALITY OF CIRCUMSTANCES.

The mere fact that a confession is obtained while the defendant is suffering from severe physical injuries and is under great

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 75 Am Jur 2d, Trial §§ 61–67.
   Prejudice effect of improper failure to exclude from courtroom or to sequester or separate state's witness in criminal case. 32 ALR2d 358.
[3] 4 Am Jur 2d, Appeal and Error § 159 *et seq.*
   21 Am Jur 2d, Criminal Law § 368.
   29 Am Jur 2d, Evidence § 590.
[4] 29 Am Jur 2d, Evidence § 543 *et seq.*
[5] 29 Am Jur 2d, Evidence § 425.

excitement and strain does not of itself render the confession inadmissible; voluntariness is to be determined from the totality of the circumstances under which the confession is obtained.

5. Searches and Seizures—Hair Samples—Paint Chips—Evidence.

   Hair samples and paint chips taken from a defendant's automobile at the scene of an accident need not be suppressed because they were obtained without a search warrant where the police had an adequate reason to believe that a crime had been committed, the paint samples could be used to compare with similar samples taken from other vehicles involved, and the hair samples could conceivably identify the occupant of the defendant's vehicle.

Appeal from Eaton, Willard L. Mikesell, J. Submitted February 3, 1976, at Lansing. (Docket No. 23129.) Decided January 17, 1977.

Douglas D. Cutler was convicted of manslaughter. Defendant appeals. Reversed and remanded.

*Frank J. Kelly,* Attorney General; *Robert A. Derengoski,* Solicitor General, *David L. Smith,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, Prosecuting Attorneys Appellate Service, for the people.

*Dunnings & Canady, P. C.,* for defendant.

Before: M. J. Kelly, P. J., and V. J. Brennan and Danhof, JJ.

M. J. Kelly, P. J. The defendant was charged with manslaughter, contrary to MCLA 750.321; MSA 28.553, in connection with an automobile accident which occurred on September 7, 1973. The defendant was tried before a jury and was found guilty as charged. He was sentenced to a term of from 2 to 15 years in prison and appeals by right.

During voir dire the court listed 28 prospective

prosecution witnesses. Prior to the opening of testimony the defense counsel moved that all witnesses be excluded from the courtroom until after testifying. The following colloquy took place:

> *"Mr. Dunnings (Defense counsel):* Well, your Honor, I think under the statute it makes it discretionary with the Court, and I think the reasons are obvious why I make such a request so that one witness cannot hear the testimony of another and there would be no persuasion or anything of that nature, and I think this is a proper motion to make in a case of this importance.
> *"The Court:* Well, I have no reason to believe that a witness would shade their testimony or not testify to the truth merely because they heard some other witness testify. The motion is denied."

The Supreme Court set forth the rules regarding sequestration of witnesses in the case of *People v Martin,* 386 Mich 407, 424; 192 NW2d 215 (1971):

> "[R]equests to sequester should ordinarily be granted. *People v Hall,* 48 Mich 482, 487; 12 NW 665 (1882). However, our cases also hold that sequestration of witnesses is a matter for the discretion of the trial court. See, for example, *People v Burns,* 67 Mich 537, 538; 35 NW 154 (1887), *People v Ring,* 267 Mich 657, 659; 255 NW 373 (1934)."

This Court has adequately treated the denial of a motion to sequester in *People v Insley,* 36 Mich App 593, 596–597; 194 NW2d 20 (1971), and *People v Erb,* 48 Mich App 622, 627; 211 NW2d 51 (1973), in which the failure on the part of the defendant to show prejudice rendered the trial judge's abuse of discretion harmless.

The colloquy above quoted took place in the presence of the jury. The trial court's statement that he had no reason to believe that the witnesses

would shade their testimony was tantamount to a vouching for the credibility of the witnesses. Was such error harmless?

Defendant's counsel argues that the testimony of the witnesses concerning the positions of the body of the deceased and the body of the defendant was in dispute. It is a close question. At least it is fair to say that the testimony was not exactly in accord with the testimony taken at the preliminary examination. Defendant urges that to require a showing that a jury would have reached a different result had the witnesses been sequestered is impossible. We agree. Under these circumstances we are prepared to presume prejudice. There were 28 witnesses, a complex factual situation, a dispute about whether the deceased was driving the vehicle or the defendant was driving the vehicle and some arguably conflicting testimony about the physical positioning of the occupants of the vehicle at the scene of the accident.

We find that the trial court's decision gave no valid reasons for refusing to sequester the witnesses and that the defendant has raised arguable questions of prejudice which we cannot say are flimsy or harmless beyond a reasonable doubt. We reverse.

The next question which concerns us is whether defendant's admission was voluntarily made. The statement was made in defendant's hospital room six days after the accident. It was also the first day he was out of intensive care. The police officer who interviewed him that day said defendant told him, *inter alia,* that he had five to ten "seven and seven's" between 4:30 and 9:30 p.m. on the day of the accident, and that after 9:30 p.m. he did not remember anything. The accident occurred at 11:45 p.m.

A *Walker*[1] hearing was held and the judge held the incriminating statements admissible.

In reviewing a finding of voluntariness at a *Walker* hearing, the reviewing court must examine the entire record and make an independent determination of the issue of voluntariness. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972). After reviewing this record, we have determined that the statement given was voluntary.

First, the facts indicate that the defendant was alternately coherent and incoherent during his period of hospitalization. However, there is no testimony that defendant was incoherent at the time he gave the statement. Three witnesses, including his parents, testified that the defendant recognized them and had conversations with them on the day he was questioned by the police officer. The defendant's father testified that he was present during the questioning and admitted that at no time did the defendant ask for a lawyer. The father could not recall whether the defendant was given his *Miranda*[2] warnings.

The officer testified that he gave the defendant his *Miranda* warnings. He stated that the defendant spoke coherently at the time he gave the statement. The statement itself indicates some detailed recollection of the events which occurred between 4:30 and 9:30 p.m. on the day of the accident. The defendant did not recall whether the police officer read him his rights. He did recall the officer's visit and remembered being told that Craig Worthington, the accident victim, was dead. He recalled nothing else of the interview.

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

Thus there is no evidence that clearly contradicts that of the police officer. At most, the defendant and his father could not recall whether *Miranda* warnings were given.

Defendant urges that a statement taken from a seriously injured and incapacitated patient is per se invalid. In *People v Cleveland,* 251 Mich 542; 232 NW 384 (1930), a defendant accused of arson was interrogated in his hospital room. He was suffering from a skull fracture and was in pain. The testimony established that he was rational, although at times he would become confused. The Michigan Supreme Court held the statements taken from him were correctly determined to be voluntary.

"The conditions under which a confession is obtained should be carefully scrutinized. If it was obtained by force, duress, promises, threats, or by any other improper methods, it should be excluded. * * * The mere fact that a defendant was suffering from severe physical injuries, and was under great excitement and strain, does not of itself render a confession inadmissible. (Citations omitted.)" 251 Mich at 547.

Voluntariness is to be determined from the totality of circumstances, *People v Inman,* 54 Mich App 5; 220 NW2d 165 (1974), *People v Falls,* 50 Mich App 586; 213 NW2d 808 (1973). Having reviewed the totality of the circumstances, we believe that the hearing judge committed no error in ruling the admission voluntary.

Other assignments of error are not discussed as they will be unlikely to recur on retrial, with one exception. Defendant moved for suppression of paint samples taken from his car, hair removed from the car and a sample of hair taken from his head. Suppression was denied after a hearing on

the motion. The trial court held that the items found in and on the car were "objects falling within the 'plain view doctrine' established by the Michigan and United States Supreme Courts, and the officers had a right to obtain said items and they would be admissible in evidence at a trial of said cause, there being no search involved".

The hair samples taken from the car and the paint samples were obtained at the scene of the accident. The officers had adequate reason to believe that a crime had been committed; that defendant's vehicle had been traveling on the wrong side of the road at an excessive rate of speed. The paint chips could be compared with like samples taken from the other vehicles involved in the collisions. The hair, through laboratory testing, could conceivably identify the occupant of the vehicle and possibly his position therein. We believe that under these facts sufficient exigent circumstances exist to validate the search under the line of cases decided by the United States Supreme Court beginning with *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925), and including *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

As to the hair sample taken from the defendant at the hospital some days later, there may have been insufficient testimony obtained at the time of the motion to suppress which preceded trial because although the officer who took the sample testified at trial that he had the defendant's permission, we do not find such testimony at the time of the motion to suppress. We can only decide whether the testimony taken at the time of the hearing on the motion to suppress showed consent in determining whether the motion was correctly decided. *People v Blessing,* 378 Mich 51; 142 NW2d

709 (1966) *cert den,* 387 US 914; 87 S Ct 1692; 18 L Ed 2d 637 (1967), *People v Kaigler,* 368 Mich 281; 118 NW2d 406 (1962). On retrial if a motion to suppress is made, we refer the trial court to the case of *United States v D'Amico,* 408 F2d 331 (CA 2, 1969), wherein it was held that clipping of strands of hair from a defendant without a warrant and without his consent was not an unreasonable search and seizure where the defendant was in custody. We realize in the instant case the defendant was not in custody but it is not clear to us from the record whether the crucial point was the question of consent or the question of the Fourth Amendment. If on motion to suppress the consent of the defendant is established *at that hearing,* then the court need go no further. If consent is not established we believe without deciding that the minor intrusion here involved may not have required a search warrant.

Reversed and remanded.

DANHOF, C. J., concurs in the result.