**Allen PHILLIPS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 71S00–8703–CR–284.**

Supreme Court of Indiana.

March 7, 1990.

Rehearing Denied May 10, 1990.

Kenneth M. Hays, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Donald B. Kite, Sr., Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant was found guilty of murdering Bernard Smith and was sentenced to forty-five years in prison. In his direct appeal, appellant raises numerous allegations of error, which have been rearranged and consolidated into the following eight:

1. The trial court erred by refusing to declare that the Indiana Constitution, Article 1, § 17, and I.C. 35–33–8–2, which provide that murder is not a bailable offense where the proof is evident and the presumption strong, violate the federal Constitution, and by refusing to let him to bail pending trial.

2. The trial court erred in denying appellant's motion for separation of witnesses, which was to be effective from the time of his bond hearing to the time of trial.

3. The trial court erred by failing to give preliminary instructions on self-defense tendered by appellant.

4. The trial court erred by granting the State's motion in limine and entering an order which prohibited the introduction of evidence or comment by counsel on the victim's reputation.

5. The trial court committed error in the method it used to qualify a child witness, in

finding that witness to be competent, and in admitting her testimony.

6. The trial court erred in admitting photographs of the victim which were gruesome and duplicitous.

7. The trial court erred in admitting the testimony of a State rebuttal witness offered in violation of a discovery order and in denying appellant's subsequent motion to strike that testimony and motion for a mistrial following that witness's testimony.

8. In its final instructions to the jury, the trial court erred when it refused part of one of appellant's tendered instructions, when it gave a flight instruction, and when it gave the instruction on presumption of innocence tendered by the State.

The evidence produced at trial which tended to support the verdict showed that the night before Bernard Smith's death, his sister and her boyfriend had a violent argument on West Washington Street in South Bend, during which a gun fell out of her purse onto a parked car. Appellant picked up the gun and later sold it. Unaware that the gun had been sold, the victim and various family members and friends spent a large part of the next day, May 27, 1986, engaged in a series of confrontations with appellant and members of his family in an effort to retrieve the gun. During one of these episodes, Robert Harris, the victim's brother, struck appellant in the face.

At about 7:20 p.m. that evening, Smith and Harris alighted from a friend's pickup truck in the 1200 block of West Washington Street. Harris testified that Dennis Johnson, appellant's cousin, stepped out from between Moore's Variety Store and Little Johnnie's Cigar Store, called appellant's name and alerted him to their presence. Harris stated that appellant then stepped away from the side of one of the buildings and fired a gun. Several witnesses testified that they heard gunshots and saw appellant running after Smith and Harris as they fled down the street. Eight-year-old Kelly Fuller testified that she saw appellant fire and Smith run from him, that

appellant shot again as Smith turned to look back at him and that Smith fell and was shot again in the leg and the chest.

Appellant interposed a self-defense claim and took the stand to testify that Smith fired on him first. Dennis Johnson and Doug Newsome likewise testified that they saw Smith draw a gun and initiate the gunfire. Investigating officers testified that a knife was found protruding from the victim's pants pocket where he had apparently fallen on it, but that no gun was found on his body or anywhere in the crime scene. The State also presented rebuttal witness Tyrone Watford, who testified that he gave Newsome a ride a day or two after the shooting, at which time Newsome described appellant's actions as "really cold-blooded," but told Watford that he did not want to jeopardize his friendship with Johnson by getting involved in the case.

### Bail

▮▮▮▮ Appellant claims that the trial court erred by denying him bail pending trial[1] and challenges the constitutionality of the provisions of the Indiana Constitution and code which govern the availability of bail on a murder charge. In Indiana, murder is not a bailable offense. Ind. Const. Art. 1, § 17; I.C. 35–33–8–2. In a murder case, the presumption is against the right to be admitted to bail, and the burden is on the accused to show that the proof is not evident nor the presumption of his guilt strong. *Partlow v. State* (1983), Ind., 453 N.E.2d 259, 274, *cert. denied*, 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219.

▮▮▮▮ The purpose of bail is to ensure the presence of the accused at trial, and the factors to be considered in setting the amount of bail are the nature of the offense, the possible penalty that could attach, the likelihood of the accused appearing at trial, and the financial position of the accused. *Pollard v. State* (1969), 252 Ind. 513, 524–25, 250 N.E.2d 748, 755. Murder is the most serious charge that can be

---

1. Since appellant has been convicted and sentenced, the question of whether the trial court properly denied bail is moot. *Bixler v. State*

(1984), Ind., 471 N.E.2d 1093, 1103, *cert. denied*, 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86.

lodged by this state against an individual and carries with it the possibility of the imposition of a sentence of death, society's harshest penalty. Given the seriousness of the charge and the severity of the consequences that could potentially attach, the likelihood that an accused person would appear for trial if let to bail is sufficiently doubtful that an initial presumption that no monetary sum could provide an adequate assurance of attendance at trial and the allocation of the burden of showing entitlement to bail on the accused does not offend the Constitution so long as that person is afforded the type of procedural due process hearing that will guarantee that bail is not denied unreasonably or arbitrarily.

■ The record reflects that the trial court conducted a hearing on appellant's bail petition at which appellant was accorded all constitutional protections guaranteed to the criminally accused: the right to counsel, the right to present witnesses in his defense and to confront and cross-examine those against him, and the right against self-incrimination. The trial court heard the testimony of five witnesses which encompassed all the evidence contemplated in the case and denied bail, having determined that the proof against appellant was evident and the presumption of his guilt strong. A review of the hearing transcript does not persuade us that the trial court abused its discretion nor that its decision was unreasonable or arbitrary, either procedurally or substantively.

### Separation of Witnesses

■ At his bail hearing, appellant entered a motion for separation of witnesses which was to remain in effect from the time of that hearing to the time of trial. Witnesses are separated during trial to prevent the testimony of one witness from influencing that of another. *Bell v. State* (1986), Ind., 495 N.E.2d 526, 527. Appellant asserts that the same danger of influence existed here during the pretrial period because of the complexities of the case, discrepancies between eyewitness accounts of the incident, and the close association between the witnesses, and he claims that

under these circumstances, the rationale underlying the separation of witnesses at trial warranted an extended separation order. He further argues that such an order was justified because the witnesses testifying at the bail hearing became aware of the type of questions that would be asked at trial. He argues that the witnesses should have been ordered not to discuss the case or their testimony from the time of the bail hearing to the completion of the trial and that the trial court erred when it denied his motion, asserting that it is probable that some witnesses may have been subject to influence by other witnesses.

Appellant urges this Court to adopt the position of the Michigan Court of Appeals in *People v. Cutler* (1977), 73 Mich.App. 313, 251 N.W.2d 303, where the appellate court presumed that the trial court's denial of defendant's motion to sequester witnesses was prejudicial and reversed a manslaughter conviction. The *Cutler* Court stated that the case involved a large number of witnesses, a complex factual situation, and trial testimony at odds with that given in a preliminary hearing. Further, the Court stated that the trial court gave no valid reasons for denying the petition and that the trial court's statement before the jury that "he had no reason to believe that the witnesses would shade their testimony was tantamount to a vouching for the credibility of the witnesses." *Id.* at 315–16, 251 N.W.2d at 304. Under these circumstances, the appellate court stated, it was willing to presume that the defendant was prejudiced by not having witnesses prevented from hearing the testimony of other witnesses. *Id.* at 316, 251 N.W.2d at 305.

Appellant's reliance on *Cutler*, however, is inapposite. First, there was no improper commentary by the trial court here on his view of the witnesses' testimony. More importantly, the motion at issue in *Cutler* was a motion for sequestration of witnesses during, not prior to, trial; therefore, the holding of the Michigan appellate court sheds no light on the validity of appellant's motion for separation of witnesses up to the time of trial. This Court, however, has addressed a challenge to the denial of a

motion for separation of witnesses during part of the pretrial period. The defendant in *Bell v. State*, 495 N.E.2d 526, moved for a separation of witnesses during voir dire, asserting that witnesses would have an opportunity to discern and discuss possible trial questions by virtue of their presence during the examination of prospective jurors. This Court stated that "[t]he timing of the separation order is a matter appropriately left to the trial judge in dealing with the vagaries of the particular trial" and refused to infer prejudice from the denial of the motion. *Id.* at 527.

■ Pretrial separation of witnesses is an extraordinary order which would be extremely burdensome to judicial administration and enforcement, and the trial court is in the best position to assess the potential for exertion of improper influence by one witness over another which would justify such an order. Appellant has made no showing that any testimony was influenced by other testimony nor that the denial of his motion resulted in any prejudice to him other than a bare assertion that it is "probable" that some of the witnesses "may" have been under the influence of others. This will not suffice to support a reversal.

### Preliminary Instructions

Appellant tendered as preliminary instructions three instructions on the nature and elements of a self-defense claim and on the burden of proof associated with such a claim. The trial court rejected these as preliminary instructions and gave the statutory definition of self-defense instead. The trial court ultimately gave two of the rejected preliminary instructions as final instructions, the third having been withdrawn by appellant. Appellant claims that the trial court's failure to give these instructions preliminarily was error.

■ Appellant asserts that the trial court committed error by not fully instructing the jury on the law applicable to the issues for trial before hearing the evidence and cites Trial Rule 51(A) and Criminal Rule 8(F) as his authority. Those two rules require that prior to the entry of evidence, "the court shall instruct ... as to

the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the testimony to be received." The jury was properly instructed at the outset of the trial that self-defense was one of the issues for trial and was fully instructed on how to evaluate the evidence received on that issue in the court's final instructions. The omission of an instruction which could appropriately have been given preliminarily can be rectified in the final instructions. *Smith v. State* (1981), Ind., 420 N.E.2d 1225; *Everly v. State* (1979), 271 Ind. 687, 395 N.E.2d 254, and this Court has noted that where the jury has been fully instructed on all the issues, the order in which it hears the instructions and the evidence provides no basis for a claim of error. *Lacy v. State* (1982), Ind., 438 N.E.2d 968, 971. While more extensive instruction on the self-defense issue prior to the evidentiary phase of the trial would have been acceptable, no error is presented here since the trial court fully addressed the issue in his final instructions.

### Reputation Evidence

■ · Prior to trial, the State was granted a motion in limine which restricted submission of evidence on or reference to the victim's character or prior acts of misconduct. Appellant claims that the grant of this motion was error. The ruling on a motion in limine is not a final ruling on the admissibility of evidence and is not reviewable on appeal; harmful error occurs, if at all, when the evidence covered by the motion is offered and refused at trial. *Akins v. State* (1981), Ind., 429 N.E.2d 232, 237. The trial court's ruling on the State's motion in limine, therefore, presents no issue for our review.

At trial, appellant offered testimony as to the victim's character in support of his self-defense claim. The trial court allowed Dennis Johnson to testify about the victim's bad reputation in the community for peace and quietude but rejected any testimony as to his reputation for carrying a gun, and appellant claims that the rejection of this evidence was error.

■ Indiana's general rule prohibits proof of the character of the deceased. *Begley v. State* (1981), 275 Ind. 235, 416 N.E.2d 824, 826. Where a self-defense claim is raised, however, there is an exception. *Id.* Evidence of the victim's character is then admissible for two distinct purposes, and the type of proof that may be tendered is restricted by the purpose for which it is being offered. "Character" has been defined as "a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance, or peacefulness," *McCormick on Evidence* § 195 at 574 (3d ed. 1984), and can be proved by evidence of specific conduct reflective of a particular character trait, by opinion testimony based on the witness's personal observations, or by testimony as to reputation generally, *id.* § 186 at 550. In this state, appreciable evidence of the victim's aggression substantiating the self-defense claim must be established before any character evidence may be relevant and admissible in a murder case. *Begley*, 275 Ind. at 238, 416 N.E.2d at 826. Evidence of specific bad acts by the victim is then admissible to show that the victim had a violent character and that the defendant had reason to fear the victim, but it is incumbent on the defendant to make a foundational showing that he had knowledge of those specific bad acts prior to the homicide before such evidence may be admitted. *McCraney v. State* (1983), Ind., 447 N.E.2d 589, 592. Character evidence is also admissible to show that the victim was the initial aggressor, but this may be proved only by general reputation evidence, not by evidence of specific bad acts. *Norris v. State* (1986), Ind., 498 N.E.2d 1203, 1205; *Miller v. State* (1960), 240 Ind. 398, 400, 166 N.E.2d 338, 339; *Niemeyer v. McCarty* (1943), 221 Ind. 688, 698, 51 N.E.2d 365, 369, *partially overruled on other grounds, Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210; *see also Kelley v. State* (1989), Ind.App. 541 N.E.2d 309, 314; *Chapman v. State* (1984), Ind. App., 469 N.E.2d 50, 53–55.

■ Appellant sought to establish that the victim was the aggressor in this incident through character evidence and urges that Johnson's testimony was erroneously excluded because the evidence being elicited was the type of general reputation evidence admissible for that purpose. Johnson was asked whether Smith had a reputation for carrying a gun, and the trial court sustained the State's objection that this was inadmissible evidence of specific bad acts by the victim. The trial court's ruling was correct. The inclusion of the word "reputation" in the question does not alter the essence of the information being sought. Asking if the victim had a reputation for carrying a gun is no different than asking if he had a reputation for inflicting beatings or for being incarcerated on felonies—questions which clearly elicit specific information beyond the boundaries of general reputation. The trial court correctly allowed Johnson's testimony that the victim had the reputation in the community for being violent and correctly rejected his testimony as to the victim's propensity for carrying weapons as being sufficiently specific to render it character evidence inadmissible for the purpose of establishing that the victim here was the aggressor.

### Qualification of Child Witness

■ Eight-year-old Kelly Fuller was called by the State to give her eyewitness account of the shooting at issue here. Under I.C. 34–1–14–5, a witness less than ten years old is presumed incompetent unless it appears that she understands the nature and obligation of an oath. Before a child under ten is allowed to testify, the trial court must conduct a voir dire examination, and to overcome the presumption of incompetence, she must demonstrate to the court's satisfaction that she understands the difference between the truth and a lie, i.e., the nature of an oath, and that she feels some compulsion to tell the truth, i.e., the obligation of an oath. *Russell v. State* (1989), Ind., 540 N.E.2d 1222, 1223.

During Kelly Fuller's examination, the trial court asked her both open-ended and leading questions. Kelly answered the leading questions but was unresponsive to those which were open-ended. He also gave her a hypothetical situation wherein

he spilled a glass of water and was confronted about it by his court reporter; he presented Kelly with possible responses he could make to the reporter, and she identified each response as either the truth or a lie. When asked what happens when a person lies, Kelly responded that "you get in trouble." She also told the court that she would tell the truth if asked to take the witness stand, and when asked to explain in her own words why she would do so, she stated, "Because [I] don't want to get in any trouble." The trial court made a finding that Kelly had overcome the statutory presumption and was competent to testify. Appellant claims that the method used to qualify the witness, the finding of competence, and the admission of her testimony were error.

 A finding by a trial court that a child witness has overcome the presumption of incompetency enjoys a presumption of validity and will not be reversed on appeal absent a manifest abuse of discretion. *Id.* The trial court has a unique "opportunity to observe the child's intelligence, demeanor and maturity," *Peters v. State* (1984), Ind., 470 N.E.2d 708, 710; therefore, the trial court's finding is accorded great deference since an appellate court's "examination of the transcribed record of the questioning cannot compare with the trial court's personal presence at the hearing as a basis for resolution of the issue," *Johnson v. State* (1977), 265 Ind. 689, 692, 359 N.E.2d 525, 528. The record clearly shows that the trial court was fully cognizant of its responsibility to observe and assess the child in making its determination. After counsel for appellant lodged his objection to the examination and argued that the child had failed to overcome the presumption of incompetency, the court stated:

> First of all, I have observed this child carefully and I think the cases have recognized the obligation of the ... trial Court and also the peculiar position of the trial Court to take into account the maturity and demeanor and intelligence of the child in trying to establish competency.... [A]s long as a witness indicates to the Court that the witness un-

derstands there is a compulsion of some kind sufficient to guarantee that the witness knows the difference of telling the truth and telling a lie and there is some sort of compulsion to tell the truth, that is enough, and I'm very satisfied that this witness met all of that. She indicated that she knew what the difference of a lie and the truth was. She indicated that very readily.... She also indicated that she was aware that she could get in trouble if she didn't tell the truth if she were asked questions up here. I'm totally satisfied that she is competent and I make that finding.

 A review of the transcript of the examination fully supports the trial court's conclusion. Appellant claims that Kelly's refusal to respond to open-ended questions and the trial court's use of "excessively leading questions" abrogated the reliability of the finding of competence. This Court has acknowledged that the trial court has wide discretion to allow leading questions and has approved the use of such questions to procure the testimony of young, inexperienced and frightened witnesses. *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138 (examination of child molestation victim who failed to respond to non-leading questions). Further, this Court has approved the use of hypotheticals as a method of qualifying a child witness, either by the witness, *Russell*, 540 N.E.2d 1222 (child witness asked during qualifying examination to give an example of a lie), or by the examiner, *Jones v. State* (1984), Ind., 464 N.E.2d 1283 (proponent of witness made statement as to the color of his clothing and asked child to identify whether statement was truth or lie). The trial court's questions to Kelly Fuller were not excessively leading, nor was the method used to qualify her improper. The court's finding that she was a competent witness and the admission of her testimony were not error.

*Admission of Photographs*

 Appellant claims that the trial court erred by admitting five photographs of the victim which depicted wounds to his head, torso, and arm. He argues that the

photos were duplicitous of others already admitted, irrelevant since the cause of death was conceded by appellant, and prejudicial due to their gruesomeness. Photographs are generally admissible if they depict an object or scene which a witness would be permitted to describe in his testimony. *Brown v. State* (1987), Ind., 503 N.E.2d 405, 409. Three of the challenged photographs were illustrative of the nature and extent of the victim's wounds and were properly admitted during the testimony of the forensic pathologist who performed the autopsy of the victim. *Christopher v. State* (1987), Ind., 511 N.E.2d 1019, 1022. The other two were properly admitted during the testimony of a police officer who testified that they accurately portrayed the appearance of the victim at the crime scene. *Id.* The trial court found that the photographs were not duplicative or cumulative because some presented closer views of the wounds which exposed areas not visible in other photos and which showed the wounds with greater specificity. This is a permissible basis upon which to admit the photographs. *Brown*, 503 N.E.2d at 409. Appellant's concession as to the cause of death does not render the photographs irrelevant or inadmissible. *Stamps v. State* (1987), Ind., 515 N.E.2d 507, 510. Relevant evidence is not inadmissible simply because it is gruesome. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, 295, *cert. denied*, 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773. Rather, such evidence should be excluded if it is unnecessary and introduced only to arouse or inflame the jury's emotions against the defendant. *Christopher*, 511 N.E.2d at 1022. The photographs at issue here were relevant and were not so gruesome that the potential prejudice to appellant outweighed their relevance. The trial court correctly admitted the photos.

### *Violation of Discovery Order*

During the cross-examination of defense witness Doug Newsome, the following colloquy took place between the deputy prosecuting attorney and Newsome:

Q:	Within a day or two after this incident, isn't it a fact that Tyrone Watford gave you a ride?

A:	Yes.

Q:	And didn't you tell Tyrone Watford during that ride that you saw Allen Phillips kill Bernard [Smith] in cold blood?

A:	No, I didn't.

Q:	Do you deny saying that to Tyrone Watford?

A:	Yes, I do.

Newsome was the last witness to testify that day. The following morning before court convened, the deputy prosecutor informed defense counsel that he planned to call Watford in rebuttal to testify that Newsome told him that appellant killed Smith in cold blood. When the State called Watford, the trial court required an offer of proof, at which time the State indicated that Watford would testify that he was told by Newsome that appellant had chased Smith down and shot him in cold blood. The trial court allowed Watford's testimony, during which he stated:

[Newsome] said [appellant] had snuck and run on the side behind some other cars and had shot Bernard and Bernard had took off running down the street and he chased him down and shot him two more times.... [Newsome] said it was cold blood, said it was really cold blooded the way he did it....

Defense counsel cross-examined Watford then, and after the witness was excused, moved to strike his testimony and for a mistrial on the basis that the State had violated the court's discovery order by not listing Watford as a witness and by failing to disclose the specificity of his expected testimony prior to his taking the stand. The trial court denied both motions and appellant assigns this as error, arguing that not knowing the exact content of Watford's testimony prejudiced him.

Pretrial discovery is designed to promote justice and to prevent unfair surprise by allowing the defense adequate time to prepare its case. *Campbell v. State* (1986), Ind., 500 N.E.2d 174, 182. The trial court's determination as to what

constitutes substantial compliance with its discovery orders is reviewed deferentially and is reversed only on a showing of clear error. *Carter v. State* (1987), Ind., 512 N.E.2d 158, 170. We find that the actions taken by the State prior to Watford's testimony satisfied its obligation under the trial court's discovery order and that the court committed no error in refusing to impose sanctions for this alleged violation. The State established at the hearing on appellant's motions to strike and for mistrial that it became aware of Watford's testimony the week of the trial, but did not anticipate calling Watford at that time because of the hearsay nature of his evidence. After Newsome testified, and Watford's testimony was rendered admissible as rebuttal evidence, the deputy prosecutor timely notified defense counsel of his intention to call Watford and of the general nature of his expected testimony. In his offer to prove, the deputy prosecutor again informed defense counsel of the essential substance, if not the precise wording, of the testimony Watford was anticipated to give. Appellant claims that his lack of discrete knowledge of the exact words to be employed by the witness was prejudicial.

Appellant is precluded from asserting that he was surprised by Watford's testimony because he was possessed of the capacity to fill any gaps in his knowledge concerning this particular witness's testimony. It is true that Watford was not on the State's witness list. Watford's name, however, did appear in appellant's own pretrial discovery materials as a potential witness. Clearly appellant knew at some point prior to trial that Watford might have information relevant to his cause. Appellant had ample opportunity between the time that list was created and the time of trial to depose Watford and ascertain the specific content of his knowledge and the style of narrative he was likely to employ in imparting that information. Appellant's contention that he was somehow prejudiced by the State's failure to include Watford on its witness list is baseless.

Even assuming *arguendo* that the State did violate the trial court's dis-covery order, appellant would have not been entitled to have Watford's testimony strickened. A trial court's choice of remedy for a violation of a discovery order is discretionary and reviewable only for abuse of discretion, and exclusion of evidence is not proper absent a "showing that the prosecution engaged in deliberate or other reprehensible conduct which thwarted the defendant's right to a fair trial." *Id.* at 171. The prosecution here did not attempt to hide the witness or to block appellant's access to him and acted in a responsible, timely manner to notify appellant of evidence adverse to him; therefore, exclusion of that evidence would have been improper.

Likewise, appellant would not have been entitled to a mistrial even if the State's actions had constituted a violation of the court's discovery order. The decision to grant a mistrial lies within the sound discretion of the trial court and is proper only where the defendant has been placed in a position of grave peril to which he should not have been subjected. *Counceller v. State* (1984), Ind., 466 N.E.2d 456, 459.

Appellant argues that Watford's testimony was so prejudicial by virtue of its content and its timing, coming as it did from the last witness to testify in the trial, that a mistrial was the only remedy appropriate under the circumstances. As noted above, the content of Watford's testimony was accessible to appellant during the pretrial period. Further, at no point from the time the State disclosed its intention to call Watford as a witness to the time Watford took the stand did appellant ask for a continuance in order to depose Watford, which is the usual remedy for failure to comply with a discovery order. *Campbell*, 500 N.E.2d at 182. Finally, the State acted appropriately as to the introduction of Watford's testimony both in terms of timing and disclosure. The State is not required to list the names of rebuttal witnesses because the nature of rebuttal witnesses is such that it is impossible to anticipate whether they will be called. *Tanner v. State* (1984), Ind., 471 N.E.2d 665, 667. The State could not have offered Watford's testimony dur-

ing its case in chief; it could only wait to see if an avenue for its introduction would be opened through one of the defense witnesses. Once that avenue was opened by way of Doug Newsome's testimony, the State timely revealed its intention to call Watford as a rebuttal witness and the general nature of his anticipated testimony. Appellant was not placed in a position of grave peril to which he should not have been subjected. There was no basis on which to grant a mistrial.

### Final Instructions

■ Appellant advances three claims of error concerning the final instructions given by the trial court, namely that the court erred by refusing part of one of his tendered instructions, by giving a flight instruction, and by giving the instruction on the presumption of innocence tendered by the State. The test applied to review a trial court's decision to give or refuse a tendered instruction is 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1093.

■ The trial court refused portions of appellant's tendered instruction Number 1 and gave the remainder as one of its final instructions. The trial court edited out that portion of appellant's instruction which recited that the filing of an information is not to be considered as evidence of the guilt of the accused. This was not error because that point of law was covered in the court's instruction Number 2. The trial court also edited out the following:

> I instruct you that in a criminal prosecution such as in this case, the interest of the State of Indiana is not that the prosecuting attorney shall win the case, but rather that justice shall be done in all cases.

Again, the trial court committed no error in deleting this language. This exhortation to the jury to go out and do justice is argu-

mentative and conceptually uninstructive. The jurors undoubtedly already knew that they were to determine a just outcome, and the balance of the court's instructions properly schooled them in the method by which they were to accomplish the task to which they had been called.

■ The trial court's decision to give a flight instruction was not error. Appellant argues that the giving of a flight instruction invades the province of the jury to determine the law and the facts and that there was insufficient evidence to support the giving of the instruction. A flight instruction does not invade the province of the jury when the jurors are told that flight of the accused is a circumstance which may be considered and from which they may draw an inference of guilt in connection with the other evidence presented. *Taylor v. State* (1986), Ind., 495 N.E.2d 710, 713. The trial court instructed the jury that if it found that appellant had fled, his flight was one circumstance that they could properly consider with all other evidence in determining his guilt. No error was committed here.

■ Further, there is sufficient evidence to support the giving of a flight instruction. The propriety of giving of flight instruction is determined by considering all reasonable inferences which can be drawn from the evidence. *Tanner*, 471 N.E.2d at 667. Appellant testified that after the shooting, he ran down Washington Street in the opposite direction of where the victim lay and that he left South Bend for Chicago. When asked why he left town, he replied, "Because I know me and the man had just had a shoot out. I heard the police coming and I ran." He testified further that he returned to South Bend when he learned there was a warrant out for his arrest. Although other interpretations are possible, certainly one plausible inference to be drawn from this testimony is that appellant fled the scene to evade detection and capture, which is sufficient to support the giving of the instruction.

The State submitted the following instruction on presumption of innocence:

In clothing those charged with crime with the presumption of innocence, the law does not contemplate that thereby the guilty should be shielded from merited punishment. Its object is to protect the innocent, so far as human agencies can, from the effects of unjust verdicts. The effect of this presumption is to withhold punishment from one charged with crime until all the facts necessary to constitute the offense charged have been proved to that degree of certainty fixed by law as being beyond reasonable doubt.

If a defendant is innocent, he should not be convicted erroneously, but if a defendant is guilty, he should not be acquitted erroneously. By acquittal of the guilty, contempt of the law is aroused among the criminal classes and the safeguards of society are weakened.

The trial gave the first paragraph in full and refused the second paragraph in full, and appellant claims that the first paragraph should have been refused as well.

The precise language of the challenged instruction, including the paragraph omitted by the trial court here, was upheld as being a proper instruction in *Opfer v. State* (1985), Ind., 482 N.E.2d 706, 709–10, and appellant concedes that instructions with identical or similar language have been repeatedly upheld by this Court. Appellant nonetheless urges us to overturn this line of cases because, he asserts, the instruction segregates innocent and guilty people and implies that the presumption of innocence operates to protect only the innocent, not the guilty. Appellant apparently would have us read the clause, "its object is to protect the innocent," in isolation both from the remainder of the instruction in which it appears and from the balance of the court's instructions and to interpret that clause to deny him the protection of the presumption of innocence. This is not the appropriate standard by which to evaluate the challenged instruction, as jury instructions are to be considered as a whole and with reference to each other. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 81.

A review of the entire set of instructions reveals that the trial court instructed the jury in its preliminary instructions that it must "presume that the defendant is innocent, and must continue to do so throughout the trial, unless the State proves every essential element of the crime with which [he] is charged beyond a reasonable doubt." After the presentation of all the evidence, the court reiterated this instruction in his final charge to the jury. The trial court also gave a general instruction defining the presumption of innocence and its effect on the allocation of the burden of proof along with the instruction at issue here, which further defined and explained how the presumption operates, and a detailed instruction defining and explaining the application of the reasonable doubt standard. Read as a whole, the instructions fully informed the jury as to the nature and operation of the presumption of innocence and the standard of proof required of the State to overcome that presumption.

The United States Supreme Court has declared that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial" and that an instruction on the presumption of innocence "represents one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485–86, 98 S.Ct. 1930, 1934–35, 56 L.Ed.2d 468, 475 (1978). The presumption operates not to protect that class of people which is factually innocent nor that which is factually guilty, but rather to protect that class of people which is *accused* of crime. For appellant's interpretation to obtain, the jury necessarily would have to determine the factual guilt or innocence of an accused in order to assess his entitlement to the protection of the presumption of innocence. The criminally accused are guaranteed that all such judgment will be withheld until such time as the State has carried its burden of establishing factual guilt through the introduction of probative evidence, and

the instruction complained of here does nothing to undermine that guarantee.

We decline appellant's offer to overturn the line of cases upholding this instruction in that we do not find that it denied him the benefit of the presumption of innocence. Nor do we find that the instruction was misleading and confusing to the jury or so unnecessary to the issues presented by this case as to be inappropriate. The trial court committed no error in giving the instruction.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., not participating.